IN the MATTER OF THE BAR ADMISSION OF
Dominic J. ANDERSON:

Dominic J. ANDERSON, Petitioner,

v.

BOARD OF BAR EXAMINERS, Respondent.

Supreme Court

*No. 2005AP2061–BA. Oral argument April 28, 2006.
—Decided June 2, 2006.*

2006 WI 57

(Also reported in 715 N.W.2d 586.)

723

For the petitioner, there were briefs by *Michael B. Van Sicklen, Daniel A. Kaplan, Theresa A. Andre* and *Foley & Lardner LLP,* Madison, and oral argument by *Michael B. Van Sicklen.*

For the respondent, the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. PER CURIAM. This is a review, pursuant to SCR 40.08(5)[1] of the final decision of the Board of Bar Examiners (Board) declining to certify that the petitioner, Dominic J. Anderson, satisfied the character and fitness requirement for admission to the State Bar of Wisconsin set forth in SCR 40.06(1).[2] We reverse and remand the matter to the Board for further proceedings.

---

[1] SCR 40.08(5) provides that "[a] petition to the supreme court for review of an adverse determination of the board under this rule shall be filed with the clerk within 30 days of the date on which written notice thereof was mailed to the applicant."

[2] SCR 40.06(1) provides: Requirement as to character and fitness to practice law.

(1) An applicant for bar admission shall establish good moral character and fitness to practice law. The purpose of this requirement is to limit admission to those applicants found to have the qualities of character and fitness needed to assure to a reasonable degree of certainty the integrity and the competence of services performed for clients and the maintenance of high standards in the administration of justice.

724

¶ 2. We appreciate the Board's concern regarding this candidate, and we appreciate the thorough investigation the Board conducted into Mr. Anderson's background and past conduct. The Board's inquiry revealed some troubling incidents in Mr. Anderson's past that raised substantial questions about his fitness to practice law. The duty to examine an applicant's qualifications for bar admission rests initially on the Board, and this court relies heavily on the Board's investigation and evaluation. In the final analysis, however, this court retains supervisory authority and has the ultimate responsibility for regulating admission to the Wisconsin bar. *See In re Bar Admission of Rippl*, 2002 WI 15, ¶ 3, 250 Wis. 2d 519, 639 N.W.2d 553, and *In re Bar Admission of Vanderperren*, 2003 WI 37, ¶ 2, 261 Wis. 2d 150, 661 N.W.2d 27.

¶ 3. While we appreciate that the Board may have felt constrained to find that Mr. Anderson's past conduct precluded certifying his character and fitness for purposes of bar admission, we conclude that the incidents the Board relied upon, while certainly troubling, are sufficiently remote in time and not of sufficient gravity to warrant a conclusion that Mr. Anderson should be forever barred from admission to the practice of law in this state. Accordingly, we reverse.

¶ 4. Mr. Anderson is 38 years old. He is married and has a young daughter. He grew up on a small family dairy farm in rural Richland Center and graduated from Ithaca High School. He began his undergraduate work at UW-Richland before transferring to UW-Platteville because he was interested in a career in law enforcement. While at Platteville he joined the United States Army Reserve. He withdrew from college in the fall of 1990 to pursue active duty and spent eight

months of service in Saudi Arabia as part of Operation Desert Shield/Storm. While in the military service Mr. Anderson was awarded the National Defense Service Medal, the Southwest Asia Service Medal, and the Driver and Mechanic Badge with Operator-S (Special) Bar. He received an honorable discharge, returned home and re-enrolled in classes at UW-Platteville.

¶ 5. Mr. Anderson transferred from the United States Army Reserve to the Wisconsin Army National Guard. While with the Guard unit, Mr. Anderson was selected by his unit commander to attend Officer Candidate School at the Wisconsin Military Academy. Upon graduation a year later he was promoted to second lieutenant, received his commission from then Governor Thompson, and supervised a platoon. At UW-Platteville he earned memberships in the Phi Kappa Phi Honor Society and the Wisconsin Criminal Justice Education Association Honor Society. He graduated from college summa cum laude with a 3.86 overall grade point average (GPA) and a 4.0 GPA in his major, Criminal Justice with an emphasis in Law Enforcement.

¶ 6. In early 1995 Mr. Anderson became employed by the Richland County Sheriff's Department. In early 1996 he joined the Monona Police Department. The record indicates that Mr. Anderson did well during his first three years on the Monona police force, and his supervising sergeant said that Mr. Anderson performed competently and professionally at all times during this period. Mr. Anderson acknowledges that his performance over an approximate six-month period beginning in the spring of 1999 was not up to the standards expected.

¶ 7. In April 1999 Mr. Anderson received a performance evaluation that rated him as being "below standards" in 11 of 21 categories. He submitted a lengthy

726

response to the evaluation in which he disputed most of the negative comments, questioned the motivation of those who felt he was not performing satisfactorily, and said he felt that some incidents had been blown out of proportion.

¶ 8. In August 1999 Mr. Anderson was placed on administrative leave following some issues with the proper performance of his duties as a police officer. He was returned to active duty following a "fitness for duty" evaluation. The evaluator found Mr. Anderson to be defensive and said he did not seem to appreciate the seriousness of the situation and that his indecisiveness at work appeared to result from a fear of failure so that he seemed to make excuses rather than confront the problem. The evaluator concluded, however, that there was no psychopathology that would preclude Mr. Anderson's continuing to function in the capacity of a police officer. The evaluator also commented that Mr. Anderson needed to be honest with himself and his goals and suggested that perhaps he might find a career other than law enforcement to be more satisfying.

¶ 9. In October 1999 Mr. Anderson was charged with four counts of criminal wrongdoing relating to a social gathering that occurred after shift, while he was off duty, at a local Monona bar, and a subsequent after-bar party that he attended with some other off-duty police officers and police department employees. The conduct involved two women. One worked as a dispatcher at the Monona Police Department and the other was a 19–year-old who was at the bar that night when Mr. Anderson arrived.

¶ 10. Mr. Anderson admits that while he was at the bar he squeezed the dispatcher's breasts without her permission, but claims he was just horsing around and that he immediately realized the inappropriateness

of his conduct but it was already too late. He also admits that he kissed the 19–year-old several times that evening, both at the bar and at the after-bar party, and he admits he put his hand in her pants but denies touching her genitals. He says the activity with the 19–year-old was all consensual. He also admits buying the 19–year-old drinks at the bar, and he says he had reason to know she was underage. A jury found Mr. Anderson not guilty of all offenses following a two day trial in June of 2000. Mr. Anderson resigned from the Monona Police Department in lieu of being terminated. After leaving the police force in order to better understand his behavior, Mr. Anderson voluntarily underwent an alcohol assessment which concluded he did not have a problem with alcohol. He also participated in some sessions with a counselor to explore psychological and emotional issues.

¶ 11. Following this incident, Mr. Anderson says he decided he wanted to pursue a career as an attorney. After working for a year at other employment, he entered the Washburn University School of Law in Topeka, Kansas in the fall of 2001. For financial reasons his wife and daughter remained in Wisconsin while he attended law school. Mr. Anderson did well in law school and graduated tied for ninth in his 148–student class. He worked as an unpaid legal extern for a federal district court judge, Honorable Sam A. Crow, and he also served as a legal intern in a criminal defense clinic during the fall semester of 2003.

¶ 12. In April 2004 Mr. Anderson filed his initial Wisconsin bar application, which he supplemented on June 29, 2004, and November 5, 2004. He took the bar exam in July 2004 and successfully passed it. He says if he is admitted to the Wisconsin bar he intends to practice in Richland Center where he grew up.

¶ 13. On December 10, 2004, the Board issued its preliminary decision to deny Mr. Anderson's bar application. In January 2005 Mr. Anderson requested an opportunity for a hearing. The Board granted his request for a hearing, and the hearing was held on the record before the Board on April 6, 2005.

¶ 14. At the hearing Mr. Anderson introduced evidence in support of his application for bar admission, including affidavits, letters of recommendation, and live testimony from his lifelong mentor, Gary Gutknecht, a physical education and health education teacher in the Ithaca Public Schools. Mr. Anderson also testified on his own behalf.

¶ 15. In its July 2005 decision denying Mr. Anderson's application for bar admission, the Board found that Mr. Anderson failed to "demonstrate that he has the temperament to conduct himself in a manner required by the Code of Professional Responsibility" and that he failed to demonstrate that "he has the honesty to conform to that Code." In support of these findings the Board pointed to Mr. Anderson's conduct as a police officer, as evidenced by his job evaluations; his temperament, as evidenced by the psychological evaluation required by the Monona Police Department; his conduct as an off-duty police officer, as evidenced by the acts which led to his prosecution for sexual assault when his status and position of authority as an officer was known to the persons involved; his conduct as an off-duty police officer toward females in a public place where his status and position of authority was known to the persons involved; his history of job problems involving authority, leading to discharges from employment; and the great variance between his descriptions of his conduct and the descriptions of others.

729

¶ 16. The Board found that the positive references submitted by Mr. Anderson were substantially countered by contemporaneous adverse evaluations. It found that the positive testimony of Mr. Gutknecht referred to matters too distant in time to be relevant to Mr. Anderson's recent conduct. It found that the positive reference by the supervising sergeant at the Monona Police Department was not of sufficient value or credibility to overcome the written record of Mr. Anderson's negative evaluations and reprimands as a police officer. The Board specifically found that Mr. Anderson's testimony at the hearing was not credible.

¶ 17. The Board made the following conclusions:

1. The applicant failed to evidence the temperament necessary in an officer of the court by his conduct as a police officer and in other settings, which is relevant to his character and fitness under SCR 40.06(3).[3]

2. The applicant misused his position of authority by his conduct as an off-duty police officer, which is relevant to his character and fitness under BA 6.02(g)[4] and under SCR 40.06(3).

---

[3] SCR 40.06(3) provides: Requirement as to character and fitness to practice law.

(3) An applicant shall establish to the satisfaction of the board that the applicant satisfies the requirement set forth in sub. (1). The board shall certify to the supreme court the character and fitness of qualifying applicants. The board shall decline to certify the character and fitness of an applicant who knowingly makes a materially false statement of material fact or who fails to disclose a fact necessary to correct a misapprehension known by the applicant to have arisen in connection with his or her application.

[4] BA 6.02 states rule requirements as to character and fitness to practice law:

3. The applicant failed to demonstrate the honesty necessary in an officer of the court by his disingenuous, evasive, and non-credible responses to the Board, which is relevant to his character and fitness under BA 6.02(c) and (d), and under SCR 40.06(3).

4. The applicant failed to evidence the temperament necessary in an officer of the court by his conduct as a police officer and in other settings, which is relevant to his character and fitness under SCR 40.06(3).

5. The applicant knowingly violated the law by his presence in a bar with and buying alcohol for an underage female, which is relevant to his character and fitness under BA 6.02(a), and under SCR 40.06(3).

Relevant Conduct. The revelation or discovery of any of the following should be treated as cause for further inquiry before the Board decides whether the applicant possesses the character and fitness to practice law:

(a) unlawful conduct

(b) academic misconduct

(c) false statements by the applicant, including concealment or nondisclosure

(d) acts involving dishonesty or misrepresentation

(e) abuse of legal process

(f) neglect of financial responsibilities

(g) neglect of professional obligations

(h) violation of an order of a court

(i) evidence of mental or emotional impairments

(j) evidence of drug or alcohol dependency

(k) denial of admission to the bar in another jurisdiction on character and fitness grounds

(l) disciplinary action by a lawyer disciplinary agency or other professional disciplinary agency of any jurisdiction

731

¶ 18. Mr. Anderson argues that the Board's findings are clearly erroneous because they do not fairly reflect the facts of record. He asserts that he does possess the requisite character and fitness to practice law in Wisconsin. In the alternative, he says that this court should consider the delay in his certification from the time of his May 2004 graduation from law school to the present as a sufficient probationary period and should still certify his application.

■■■■■

¶ 19. This court applies a two-pronged standard of review when reviewing an adverse determination by the Board. First, we will adopt the Board's findings of fact if they are not clearly erroneous. *Vanderperren,* 261 Wis. 2d 150, ¶ 20. Second, we then determine whether the Board's conclusions of law based on the non-erroneous facts, are proper. Although this court appreciates the Board's expertise in administering the bar admission rules, the court is obliged to make that legal determination de novo. *Id.*

■■■■

¶ 20. A candidate for admission to the bar in Wisconsin bears the burden of proof to establish that he or she meets the qualifications for admission set forth in SCR 40.02; these qualifications include meeting the character and fitness requirements identified in SCR 40.06. *See* SCR 40.02(3). In addition, SCR 40.07 provides that "[t]he burden of proof shall be on the applicant to establish qualifications under SCR 40.02. . . ." Pursuant to SCR 40.06(3), the applicant must establish character and fitness to the satisfaction of the Board whose duty it is then to certify to the supreme court character and fitness of qualifying applicants. *Vanderperren,* 261 Wis. 2d 150, ¶ 21.

¶ 21. After a careful review of the record, we do not deem any of the Board's findings of fact to be clearly erroneous. However, in our opinion, the findings of fact do not support the Board's ultimate conclusion to deny Mr. Anderson admission to the Wisconsin bar.

¶ 22. As noted in Mr. Anderson's brief, the Board appears to focus on four points in denying his application for bar admission: (1) his job performance as an officer with the Monona Police Department in 1999, before he went to law school; (2) his off-duty conduct one night in 1999 which the Board suggests illustrates his propensity to misuse his position of authority, a poor attitude towards women, and a willingness to violate the law; (3) his "history of job problems" which led to his "discharges from employment;" and (4) his allegedly "disingenuous, evasive and non-credible responses to the Board," presumably related to inquiries wherein he continued to dispute the allegations relating to the criminal charges for which he was fully acquitted.

¶ 23. With respect to his job performance on the Monona police force in 1999, Mr. Anderson acknowledges that after three years of satisfactory service as a police officer his performance slipped in his final year on the force and he was reprimanded, after which he resigned. He says while he regrets the poor job performance that resulted in the reprimand, that incident should be taken in context, since he did perform well during his first three years as a Monona police officer.

¶ 24. While the record supports the Board's findings that Mr. Anderson's conduct as a police officer during his final months on the job was, in at least some respects, substandard, we do not find the sub-par job performance of sufficient gravity to bar Mr. Anderson from being admitted to the practice of law in this state.

733

While, in hindsight, Mr. Anderson probably should have resigned from the Monona Police Department and pursued other employment sooner than he did; ultimately, he did heed the evaluator's suggestion that he might find a career other than law enforcement more satisfying.

¶ 25. With respect to Mr. Anderson's "history of job problems" which led to "discharges from employment," Mr. Anderson admits that he was terminated from two jobs, the Country Kitchen and Kwik Trip, in Richland Center in 1989, before he began his undergraduate studies at UW-Platteville and before he entered military service and nearly 15 years before his application for bar admission. We find these long ago incidents of little or no relevance in weighing whether Mr. Anderson currently has the character and fitness to practice law in Wisconsin. While Mr. Anderson admits that he resigned from the Monona Police Department in lieu of being terminated, we again do not find this sufficient cause to forever bar him from the practice of law in this state.

¶ 26. Mr. Anderson's off-duty conduct which led to the criminal charges being filed against him in 1999 is, without a doubt, the most troubling part of this record. Even though he was acquitted of the criminal charges and was not charged with providing alcohol to a minor, a 31–year-old man, and particularly a police officer, should have conducted himself in a more becoming and mature manner than Mr. Anderson did at the Monona bar and the party that followed. While Mr. Anderson attempts to excuse his conduct by saying that he was experiencing marital problems at the time and that he had lost interest in his job, neither of these factors excuses the extremely immature and troubling behavior. Nevertheless, it is important to look at Mr.

Anderson's conduct and record since 1999. We find Mr. Anderson's post-1999 conduct supports the conclusion that he does have the character and fitness to be admitted to the Wisconsin bar.

¶ 27. Since leaving the Monona Police Department Mr. Anderson has had a largely unblemished record of good behavior. He paid his own way through law school and graduated in the top ten of his law school class. In support of his application for bar admission Mr. Anderson submitted multiple affidavits from people who knew or worked with him in law school, and all were uniformly positive. Mr. Anderson admits that in 1999 he exercised poor judgment and engaged in conduct of which he is not proud. He says he is human and made some mistakes but since that time he has rededicated his life. Although we, like the Board, are very troubled by the 1999 incidents, we do not believe those incidents should preclude Mr. Anderson's admission to the bar of this state on character and fitness grounds.

¶ 28. The Board found Mr. Anderson's testimony at the evidentiary hearing was disingenuous, evasive, and incredible. The Board argues the fact that a jury acquitted Mr. Anderson of all criminal charges arising from the 1999 incident does not necessarily mean the jury believed his version of events and the acquittal simply meant that the jury had a reasonable doubt about some element of the offenses with which Mr. Anderson was charged. Several board members observed, following the hearing, that although Mr. Anderson said he was sorry for his bad behavior, he then turned right around and said he did not do anything wrong for which he had any reason to be sorry.

¶ 29. In support of its conclusion that Mr. Anderson was untruthful, the Board points to his responses to questions posed by the Board about an incident that

occurred in a Topeka tavern on St. Patrick's Day 2004, when Mr. Anderson was in his last semester of law school. Mr. Anderson and a female law school friend went to a tavern. After observing police officers, Mr. Anderson admits making a boorish and inappropriate remark which he says was a quote "from a movie." Mr. Anderson claims he made the comment in a low voice that he intended only his female friend to hear. One or more police officers heard the remark and, after an apparently heated discussion with Mr. Anderson, issued a ticket for interference with a police officer. The ticket was subsequently dismissed, either because it was lost or because the issuing officer chose to withdraw it.

¶ 30. Although the Board's decision denying Mr. Anderson's application for bar admission does not refer to the Topeka incident, the Board discussed the incident at some length in its brief and also at oral argument. The Board says instead of recognizing that he made an apparently inflammatory remark which would naturally anger a police officer, Mr. Anderson continues to blame the officers who overheard the remark for getting upset because they did not personally like his comment. The Board accuses Mr. Anderson of "flip-flopping" in his answers to questions about the Topeka incident. It says this flip-flopping is consistent with personality traits discussed in Mr. Anderson's fitness assessment while on the Monona police force in which the evaluator noted that Mr. Anderson had a tendency to answer questions in a "socially desirable fashion rather than being entirely honest" and that he tended to minimize his problems and blame others rather than accepting responsibility for his own shortcomings. The Board points out that lawyers are often criticized by opposing counsel for things they say. The Board asserts both Mr. Anderson's underlying conduct

when he was justifiably criticized for his demeaning remark in the Topeka tavern and his continuing efforts to justify actions that unnecessarily escalated the confrontation he created fail to inspire confidence in his ability to appropriately deal with the ordinary pressures of practicing law.

¶ 31. We find the Topeka incident very troubling, both because it is another example of immature behavior and because it mars Mr. Anderson's otherwise seemingly exemplary record since leaving the Monona police force. However, we note that Mr. Anderson did disclose the incident, and we also note that his female companion submitted an affidavit in which she completely corroborated his version of events. Under the circumstances we cannot find that the Topeka incident should preclude Mr. Anderson's admission to the bar on character and fitness grounds.

¶ 32. We appreciate the time-consuming and difficult job the Board performs in conducting character and fitness investigations pursuant to SCR 40.06. We conclude, however, after our own mandated de novo review, that the incidents from Mr. Anderson's past cited by the Board to support its fact-driven determination that he lacks the character and fitness to be admitted to the bar of this state, are not of sufficient gravity for us to adopt that conclusion. In closing, we find Justice Prosser's concurrence in *Vanderperren* to apply with equal force here:

> With respect to her character and fitness, the incidents described are serious but they are mostly youthful excesses and mistakes, and cannot block her admission forever. All in all, I believe the applicant deserves the benefit of the doubt. She should have the opportunity to begin the practice of law with a clean slate—with an

understanding of the importance that courts attach to character and ethics and a warning that this court has a long memory.

*Vanderperren,* 261 Wis. 2d 150, ¶ 65 (Prosser, J., concurring).

¶ 33. IT IS ORDERED that the decision of the Board of Bar Examiners declining to certify that Dominic J. Anderson has satisfied the requirements for admission to the practice of law in Wisconsin is reversed and the matter is remanded to the Board for further action consistent with this opinion.