# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP1393-BA |
| COMPLETE TITLE: | In the Matter of the Bar Admission of Joshua E. Jarrett |

Joshua E. Jarrett,
        Petitioner,
    v.
Board of Bar Examiners,
        Respondent.

BAR ADMISSION OF JARRETT

| | |
|---|---|
| OPINION FILED: | May 18, 2016 |
| SUBMITTED ON BRIEFS: | February 24, 2016 |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | PROSSER, J. concurs, joined by BRADLEY, A.W., J. and BRADLEY, R.G., J. |
|   DISSENTED: | ROGGENSACK, C. J. dissents, joined by ZIEGLER, J. and GABLEMAN, J. |
|   NOT PARTICIPATING: | |

ATTORNEYS:

    For the petitioner, there were briefs by *Joshua E. Jarrett.*


    For the Board of Bar Examiners, there was a brief by *Jacquelynn B. Rothstein*, Director & Legal Counsel.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2015AP1393-BA

STATE OF WISCONSIN                      :            IN SUPREME COURT

**In the Matter of the Bar Admission of Joshua E. Jarrett**

**Joshua E. Jarrett,**

          **Petitioner,**

     **v.**

**Board of Bar Examiners,**

          **Respondent.**

**FILED**

**MAY 18, 2016**

Diane M. Fremgen
Clerk of Supreme Court

---

REVIEW of Board of Bar Examiners decision. *Decision reversed and remanded.*

¶1  PER CURIAM.  This is a review, pursuant to SCR 40.08(7), of the final decision of the Board of Bar Examiners (Board) declining to certify that the petitioner, Joshua E. Jarrett, has satisfied the character and fitness requirements for admission to the Wisconsin bar set forth in SCR 40.06(1). The Board's refusal to certify that Mr. Jarrett satisfied the character and fitness requirements for admission to the

Wisconsin bar was based primarily on Mr. Jarrett's conduct following his second year in law school, when he committed academic misconduct by misrepresenting law school grades and information to a prospective employer.  After careful review, we reverse and remand the matter to the Board for further proceedings.

¶2  We appreciate the Board's concern regarding this candidate, and we appreciate the thorough investigation the Board conducted into Mr. Jarrett's background and past conduct. Mr. Jarrett's academic misconduct raised a significant question about his fitness to practice law. The duty to examine an applicant's qualifications for bar admission rests initially on the Board, and this court relies heavily on the Board's investigation and evaluation. In the final analysis, however, this court retains supervisory authority and has the ultimate responsibility for regulating admission to the Wisconsin bar. See In re Bar Admission of Rippl, 2002 WI 15, ¶3, 250 Wis. 2d 519, 639 N.W.2d 553, and In re Bar Admission of Vanderperren, 2003 WI 37, ¶2, 261 Wis. 2d 150, 661 N.W.2d 27.

¶3  While we understand the Board's decision, we conclude that the incidents the Board relied upon, while troubling, are sufficiently offset by evidence of rehabilitation to warrant our conclusion that Mr. Jarrett may be admitted to the practice of

law in this state, albeit with conditions. Accordingly, we reverse.

¶4 Mr. Jarrett grew up in Georgia. He attended Albany State University, majoring in Criminal Justice and graduating in 2009. He participated in a prestigious summer internship with the U.S. Department of State in Washington D.C., and then returned to Georgia to become a police officer. After serving successfully as a police officer for a year, Mr. Jarrett applied and was accepted at the University of Wisconsin Law School.

¶5 Mr. Jarrett started law school in the fall of 2011. As a first-year law student, Mr. Jarrett was accepted into the Wisconsin Innocence Project criminal appeals clinic where he performed well.

¶6 In 2012, Mr. Jarrett committed the misconduct that eventually gave rise to this proceeding. The Board would later make the following factual findings regarding the incident:

> 2. In the Summer of 2012 and as part of the summer employment procurement process for law students, Mr. Jarrett submitted a resume and an unofficial transcript to the University of Wisconsin Law School office responsible for on-campus interviews. Through that process, Mr. Jarrett sought employment with the New York City Law Department for the Summer of 2013.
>
> 3. The resume and unofficial transcript that Jarrett submitted to the New York City Law Department were both false. The resume contained two falsehoods. It showed Mr. Jarrett's grade point average (GPA) to be 2.75, when it was actually 2.72. It also listed him as a staff member of the Wisconsin Law Review,

3

when, in fact, he was not a member. The unofficial transcript listed three false grades for his coursework. It indicated that he had "B" grades, when, in fact, he had "B-" grades for all three courses.

4. Thereafter, Mr. Jarrett sent an e-mail to the New York City Law Department. In it, he explained that the deadline date for the submission of his employment materials was the same date upon which he had been informed that he had not been chosen for Law Review.

5. Determined to be "completely forthright" with the New York City Law Department, Mr. Jarrett attached an updated resume and unofficial transcript to the e-mail noting that all the other information was current and valid. However, Mr. Jarrett did not correct the other falsehoods, namely the inflated grades and GPA. Instead, this version of his transcript noted his GPA as a 3.0, not the inflated 2.75 or the actual 2.72.

6. In that same e-mail to the New York City Law Department, he continued to report incorrect grades. Two grades were inflated from "B-'s" to "B's." Two others were similarly inflated; one from a B- to a B+ and the other from a B to a B+.

7. A hearing regarding Mr. Jarrett's alleged misconduct was held on September 7, 2012, before the Academic Misconduct Hearing Committee of the University of Wisconsin (Committee). On September 17, 2012, the Committee issued a written decision and determined that Mr. Jarrett admitted to having embellished his academic documents on two separate occasions.

8. The Committee further found that although Mr. Jarrett had admitted to violating the University of Wisconsin's academic code of conduct by forging or falsifying academic documents or records, the seriousness of that offense did not seem to immediately resonate with Mr. Jarrett. The Committee

4

also sanctioned Mr. Jarrett by placing him on two semesters of disciplinary probation.[1]

9. In his application for admission to the Wisconsin bar, Mr. Jarrett admitted to inflating his grades and misrepresenting his position on the Wisconsin Law Review.

10. Mr. Jarrett did not disclose the actual truth to the New York City Law Department about being on Law Review, his grades, or his GPA.

11. Mr. Jarrett repeatedly cited feeling enormous pressure as the primary reason for engaging in his wrongful conduct.

12. Mr. Jarrett admitted that at the time of his wrongful conduct he did not believe that he would get caught for providing false information to the New York City Law Department or that anyone would check to see whether he was actually on Law Review.

¶7 Meanwhile, Mr. Jarrett's law school studies continued. He continued to perform well working for the Wisconsin Innocence Project, joined the University of Wisconsin Law School Moot Court Board, competed in two moot court competitions, coached a moot court team, participated in a Volunteer Income Tax Assistance Clinic, held an unpaid summer law clerk position with the Wisconsin Department of Revenue, and worked as an academic advisor at a private student housing facility.

---

[1] In addition to placing Mr. Jarrett on academic probation for two semesters, the Committee also required Mr. Jarrett obtain the latest issue of Wisconsin Lawyer magazine, read the pages pertaining to attorney conduct, and schedule a meeting with the Law School Dean to discuss what he had read. Mr. Jarrett satisfied these requirements.

5

¶8 In December 2013, as a third-year law student anticipating graduation, Mr. Jarrett applied for admission to the Wisconsin State Bar under the diploma privilege, SCR 40.03. In his bar application, Mr. Jarrett disclosed having inflated his grades and misrepresenting his position on the Wisconsin Law Review in his bar application. Mr. Jarrett failed to report several traffic citations that he had received between 2009 and 2013.

¶9 In January 2014, a Board investigator contacted Mr. Jarrett regarding his failure to disclose the traffic citations. Mr. Jarrett replied in writing that he "legitimately forgot" and filed an addendum regarding the citations.

¶10 On August 5, 2014, the Board informed Mr. Jarrett, consistent with SCR 40.08(1), that his bar admission application was "at risk of being denied" on character and fitness grounds. Mr. Jarrett formally contested the Board's preliminary adverse determination and requested a hearing before the Board.

¶11 The Board conducted a hearing on December 8, 2014, at which Mr. Jarrett appeared. Following the hearing Mr. Jarrett filed some additional documents in support of his application. On April 10, 2015, the Board issued an adverse decision making the findings set forth above, as well as the following findings:

> 13. During his hearing before the Wisconsin Board of Bar Examiners, Mr. Jarrett presented inconsistent and sometimes contradictory statements regarding his efforts to obtain summer employment with the New York City Law Department, and about the extent to which he notified the New York City Law Department regarding the falsehoods presented to them. He also

minimized the significance of the misconduct in which he had engaged.

14. Mr. Jarrett's conduct in connection with his efforts to secure summer employment with the New York City Law Department was both dishonest and deceptive. Such conduct demonstrates that Mr. Jarrett is not honest, diligent, or reliable.

15. Mr. Jarrett also failed to report three speeding tickets on his bar application. The speeding infractions occurred in 2009, 2011, and 2014. Mr. Jarrett explained that the reason he failed to report those citations was because he forgot about them. The Board did not find Mr. Jarrett's explanation regarding why he failed to report those tickets to be credible.

16. In 2006, Mr. Jarrett was arrested in Albany, Georgia, on a bench warrant because of his failure to appear for two speeding tickets. As a result of his nonappearance, he spent two days in jail.

17. Following the receipt of his Georgia speeding tickets, Mr. Jarrett claimed that he tried contacting the local traffic department and the court to change the date of his appearance because it conflicted with his college exam schedule. However, Mr. Jarrett admitted that he never wrote a letter or sent an e-mail in which he notified the court that he had a conflict on the scheduled date of his appearance.

18. The Board did not find Mr. Jarrett's explanations about his misconduct or his omissions on his bar application to be plausible or believable. As a result, the Board did not find Mr. Jarrett to be a credible witness.

¶12 Based on its findings, the Board determined that Mr. Jarrett failed to establish good moral character and fitness to practice law in Wisconsin under SCR 40.06(1) and (3), concluding:

Taken as a whole, Mr. Jarrett's conduct suggests a pattern of behavior that is both dishonest and deceptive. He has not been forthright but has instead

engaged in conduct that demonstrates that he is not honest, diligent, or reliable. Throughout these proceedings, Mr. Jarrett has consistently tried to minimize the gravity of his offenses.

¶13 Mr. Jarrett unsuccessfully sought review of the Board's adverse determination pursuant to SCR 40.08(6). He now seeks this court's review.

¶14 Mr. Jarrett contends that the Board's findings are clearly erroneous and should be rejected by this court. See In re Bar Admission of Rusch, 171 Wis. 2d 523, 528-29, 492 N.W.2d 153 (1992). Furthermore, he contends that the legal conclusions reached by the Board are not supported by the record evidence, and that this court must, after its de novo review, reject the Board's conclusions of law. See Rippl, 250 Wis. 2d 519, ¶16; In re Bar Admission of Crowe, 141 Wis. 2d 230, 232, 414 N.W.2d 41 (1987). Mr. Jarrett also challenges the Board's decision declining to offer him conditional bar admission pursuant to SCR § 40.075(1). He references numerous, positive character references and hours of volunteer service. In sum, he maintains that he has met his burden of producing information sufficient to affirmatively demonstrate his present character and fitness. He asks this court to order his immediate admission, order the Board to conditionally admit him, or allow him to immediately re-apply for admission to the Wisconsin bar without being required to take the Wisconsin bar exam.

¶15 When this court reviews an adverse determination of the Board pursuant to SCR 40.08(7), we adopt the Board's findings of fact if they are not clearly erroneous. In the

8

<u>Matter of the Bar Admission of Vanderperren</u>, 2003 WI 37, ¶20, 261 Wis. 2d 150, 661 N.W.2d 27. We then determine if the Board's conclusions of law based on those facts are proper. <u>Id</u>. This court retains the ultimate authority to determine who should be admitted to the bar of this state. While the Board's experience in administering the bar admission rules is appreciated, this court is obligated to make its legal determinations de novo. <u>Rippl</u>, 250 Wis. 2d 519, ¶¶13, 16.

¶16 We reject Mr. Jarrett's assertion that the Board's findings are clearly erroneous. Mr. Jarrett disputes the Board's factual finding that "[Mr.] Jarrett exhibited a lack of candor/credibility in applying for admission," a finding Mr. Jarrett describes as "patently untrue." He disputes the Board's finding that he minimized the significance of his conduct, stating that the Board read too much into the UW misconduct decision and asserting that the "record shows that [Mr. Jarrett] realized his actions were significant, wrong, unethical, and would impact his character and fitness." Mr. Jarrett disputes the Board's finding that he willfully failed to report the speeding tickets in his initial bar application. He maintains that he "legitimately forgot" and notes that he answered "yes" to Question 21(a) in his bar application which asks if the applicant has ever been arrested, charged, or issued civil citations and adds that he "took corrective steps by providing the Board with separate addenda explaining the circumstances how he forgot to list them." He thus asserts that he "did not fail

9

to disclose the fact that he had received multiple speeding tickets and took action to inform the Board."

¶17 The Board stands by its finding that Mr. Jarrett was not credible at the hearing before the Board and when claiming he forgot about the three separate speeding violations from Georgia, Kentucky, and Wisconsin that he received in 2009, 2011, and 2013. The Board reminds the court that the 2013 speeding violation occurred in Madison three months prior to Mr. Jarrett filing his bar application with the Board. The Board concedes that each ticket, standing alone, was not overly concerning, but finds that failing to include all three was "careless at best and deliberately deceptive at worst." The Board maintains that Mr. Jarrett has consistently minimized the seriousness of his behavior by glossing over both the recency and the gravity of his conduct, pointing not only to statements from the 2012 academic misconduct proceeding but also statements at the hearing before the Board.

¶18 The Board's factual findings essentially derive from the undisputed underlying academic misconduct proceeding and from its own credibility determinations at the Board hearing. We are disinclined to second guess credibility determinations made by factfinders. Nothing in this record suggests that it was clearly erroneous for the Board to reject Mr. Jarrett's claim that he forgot to disclose traffic citations, particularly when his application was already at-risk for his admitted academic misconduct. The other factual findings, particularly those based

on the Board's credibility determination, also have sufficient support and are not clearly erroneous.[2]

¶19 We next evaluate the Board's decision not to certify Mr. Jarrett's character and fitness.

¶20 The standards for evaluating an applicant's admission to the Wisconsin bar are well settled. SCR 40.06(1) requires that applicants for bar admission establish good moral character and fitness to practice law. The burden rests with the applicant to establish character and fitness to the satisfaction of the Board. See SCRs 40.06(3) and 40.07. The Appendix to SCR Ch. 40 contains the Board's rules that provide additional guidance to the Board and to applicants.

¶21 BA 6.01 provides that "[a] lawyer should be one whose record of conduct justifies the trust of clients, adversaries, courts and others with respect to the professional duties owed to them." That same section notes that "[a] record manifesting a deficiency in the honesty, diligence or reliability of an applicant may constitute a basis for denial of admission."

¶22 BA 6.02 provides that in determining whether an applicant possesses the necessary character and fitness to practice law, 12 factors "should be treated as cause for further inquiry." BA 6.02 (Relevant Conduct or Condition). As

---

[2] Mr. Jarrett identifies one factual inaccuracy in the Board's decision. The Board's underlying decision states that Jarrett received a speeding citation in 2014. However, the last traffic citation Mr. Jarrett received occurred in 2013. This error is not material to the Board's decision.

11

relevant, these factors include a person's unlawful conduct, academic misconduct, false statements by the applicant, including concealment or nondisclosure, and acts involving dishonesty or misrepresentation. See id.

¶23 BA 6.03 provides that in assigning weight and significance to the applicant's prior conduct, the following factors are to be considered:

(a) the applicant's age at the time of the conduct;

(b) the recency of the conduct;

(c) the reliability of the information concerning the conduct;

(d) the seriousness of the conduct;

(e) the mitigating or aggravating circumstances;

(f) the evidence of rehabilitation;

(g) the applicant's candor in the admissions process;

(h) the materiality of any omissions or misrepresentations; and

(i) the number of incidents revealing deficiencies.
See SCR 40 app., BA 6.03.

¶24 The crux of this appeal is whether Mr. Jarrett's conduct and actions, taken as a whole, establish that he has the requisite character and fitness for admission to the bar. When conducting our de novo review, we, like the Board, use the guidelines established in BA 6.02 and BA 6.03.

¶25 The Board was not persuaded that Mr. Jarrett's academic achievements and his various law-related experiences were sufficient to warrant certifying his character at this

time. In response to Mr. Jarrett's explanation that he was under "immense pressure" to find a job for the summer which led him to make a "poor decision," the Board stated:

> [A]t no point did Mr. Jarrett identify any such specific pressures that may have warranted such extreme behavior on his part. Presumably the vast majority of law students want or need summer employment. Ideally, they would prefer to be employed in law-related positions. But few, if any, resort to conduct similar to Mr. Jarrett's in order to obtain it. His explanation for engaging in conduct of this type primarily because he was under pressure is not convincing and rings hollow.

¶26 As the Board observed, whatever pressures Mr. Jarrett felt while in law school "are not likely to appreciably diminish or disappear now that he has graduated."

¶27 Having reviewed the record and the Board's specific findings, we reject Mr. Jarrett's claim that, in making its decision, the Board focused solely on the 2012 incident. We are persuaded that the Board duly considered all facets of Mr. Jarrett's application, and its decision was not based solely or unduly on the 2012 misconduct. See Saganski v. Board of Bar Examiners, 226 Wis. 2d 678, 595 N.W.2d 631 (1999) (holding that it is sufficient that the Board consider those BA 6.03 factors that are applicable to the conduct of the applicant).

¶28 Mr. Jarrett argues that the BBE's adverse determination is inconsistent with this court's resolution of other bar admission cases. This court has, on several occasions, certified applicants to the bar despite an adverse determination from the BBE.

13

¶29 In Anderson, the court deemed the applicant's "extremely immature and troubling" behavior "sufficiently remote in time and not of sufficient gravity to warrant a conclusion that Mr. Anderson should be forever barred from admission to the practice of law in this state." In the Matter of the Bar Admission of Anderson, 2006 WI 57, ¶26, 290 Wis. 2d 722, 715 N.W.2d 586. By the time of his bar application, Mr. Anderson's record had been unblemished for several years.

¶30 In Vanderperren, the Board's refusal to certify Ms. Vanderperren was based primarily on her "less than forthright and complete responses" to questions on her application for admission to Hamline University School of Law, and on her subsequent Wisconsin bar application. By the time this court considered her bar application, Ms. Vanderperren had been admitted to practice law in Minnesota, had passed the Wisconsin bar exam, had voluntarily corrected her bar application, and several years had elapsed since her last reported incident involving excessive alcohol consumption. Vanderperren, 261 Wis. 2d 150, ¶65; see also Rippl, 250 Wis. 2d 519, ¶3.

¶31 Mr. Jarrett reminds the court that here, "[m]ore than two years elapsed between the academic misconduct and the date of the Board's hearing, and more than three years have elapsed as of today." Indeed, as of the date of this court's decision, nearly four years have passed. Mr. Jarrett argues that now, sufficient time has passed and he should be admitted to practice law.

14

¶32 The Board was right to be deeply concerned by Mr. Jarrett's dishonesty, which cannot fairly be characterized as "youthful excesses and mistakes" and is different from indiscretions arising from immature behavior coupled with situational or pervasive substance abuse that has since been addressed.

¶33 Still, a majority of this court has determined that denying Mr. Jarrett admission to the bar is simply too harsh a penalty under the circumstances presented. We appreciate the time-consuming and difficult job the Board performs in conducting its character and fitness investigations. Indeed, we find no fault with the Board's findings or reasoning in this case. The Board serves the critically important role as a gatekeeper to admission to the bar. Ultimately, however, we are persuaded that, subject to the imposition of certain conditions, Mr. Jarrett may safely be admitted to the practice of law.

¶34 While not excusing his actions, we are mindful that Mr. Jarrett has faced difficult family circumstances that imposed considerable pressure on him, both financial and otherwise. His goal of becoming a lawyer has now been delayed several years, and his prospect of ever obtaining bar admission has been uncertain. By his own admission, his actions in law school have caused him significant obstacles, embarrassment, and financial difficulties.

15

¶35 In the nearly four years since his academic misconduct, Mr. Jarrett has completed unpaid legal internships and meaningful legal volunteer work serving economically challenged clients, has mentored students, and currently works in a public trust position in Washington, D.C. Employers and professors who have worked closely with Mr. Jarrett speak highly of him as an individual, and of his sincere commitment to justice. The many letters reflect a consistent theme of admiration for Mr. Jarrett's work ethic, judgment, and his compassion. We therefore choose to exercise our prerogative and afford this applicant the benefit of the doubt.[3]

¶36 Accordingly, we direct the Board to certify Mr. Jarrett's admission to practice law in Wisconsin. Mr. Jarrett's admission to the practice of law in Wisconsin is contingent on his compliance with certain requirements set forth in this order as well as certain conditions on his license to practice law. Specifically, we direct the Office of Lawyer Regulation (OLR) to identify and appoint a practice monitor to serve as a mentor to Mr. Jarrett and to supervise and oversee Mr. Jarrett's practice of law and related professional activities for a period of two

---

[3] We accept the Board's determination that conditional admission pursuant to SCR 40.075(1) was not appropriate here. This does not preclude this court from imposing its own conditions on Mr. Jarrett's license to practice law.

years following the practice monitor's appointment. The practice monitor shall be licensed to practice law in Wisconsin and be located in the region of Mr. Jarrett's place of employment or residence.

¶37 Upon Mr. Jarrett's admission to the practice of law in Wisconsin and his enrollment with the State Bar of Wisconsin pursuant to SCR 10.03(2), Mr. Jarrett is directed to initially elect inactive membership status.  See SCR 10.03(3)(a). This will afford the OLR time to identify a practice monitor and will obviate the need for Mr. Jarrett to bear the costs and obligations of monitoring before he assumes the active practice of law.

¶37 When the OLR advises Mr. Jarrett that a practice monitor has been identified, Mr. Jarrett may, with written notice to the OLR, change his classification to active status by complying with SCR 10.03(3)(b)1. The formal appointment date of the monitor will be the date Mr. Jarrett elects active membership in the State Bar pursuant to SCR 10.03 (3)(b)1.

¶38 We direct Mr. Jarrett to cooperate with the OLR, cooperate with his practice monitor, comply with all requirements imposed upon him by the OLR relating to his monitoring including executing, within five days of the date he elects active membership, a written monitoring agreement setting forth the terms of Mr. Jarrett's monitoring as determined by the

practice monitor. Mr. Jarrett shall comply with all reasonable requests of his practice monitor[4] and shall bear the reasonable costs of such monitoring.

¶39 Upon appointment, the monitor shall report to the OLR, in writing, on a quarterly basis. Within thirty days prior to the expiration of the two-year monitoring period, the OLR shall file a report in this court in which it shall recommend to the court that the conditions on Mr. Jarrett's admission be allowed to terminate or be extended.

¶40 Should Mr. Jarrett fail to make a good faith effort to satisfy these conditions, or should he commit misconduct during the monitoring period, his license to practice law may be suspended or revoked and he may be subject to other discipline pursuant to the Rules of Professional Conduct for Attorneys.

¶41 IT IS ORDERED that the decision of the Board of Bar Examiners declining to certify that Joshua E. Jarrett has satisfied the requirements for admission to the practice of law in Wisconsin is reversed and the matter is remanded to the Board for further action consistent with this order.

---

[4] Lawyer monitoring often requires a lawyer to undergo an AODA (alcohol and other drug abuse) assessment and/or psychological evaluation. The record before this court is devoid of evidence suggesting these assessments are needed here. They should not be imposed absent evidence that would warrant such conditions.

¶42 IT IS FURTHER ORDERED that Joshua E. Jarrett shall comply with the directives set forth in this order and shall, promptly upon receipt of this order, provide the Office of Lawyer Regulation with a copy of the entire record in this matter and authorize the OLR to share the record with the practice monitor.

¶43 IT IS FURTHER ORDERED that subject to the required disclosures to the Office of Lawyer Regulation and practice monitor as set forth herein, the documents submitted under seal are deemed confidential, and will be maintained under seal until further order of the court.

¶44  DAVID T. PROSSER, J. *(concurring).*  This is an unusual and difficult case that has divided the court.  I write separately to explain my thinking.

¶45  The court finds no fault in the decision of the Board of Bar Examiners (Board) not to certify Joshua Jarrett unconditionally for membership in the Wisconsin bar.  We also understand the Board's determination that Mr. Jarrett did not qualify for conditional admission under SCR 40.075 because "[o]nly an applicant whose record of conduct demonstrates documented ongoing recovery [from such problems as drug or alcohol dependency] <u>and</u> an ability to meet the competence and character and fitness requirements set forth in SCR 40.02 may be considered for conditional admission."  SCR 40.075(1) (emphasis added).  The Board reasoned that Mr. Jarrett did not meet the character and fitness requirements of the rule and that the rule has no provision for demonstrating the "ongoing recovery" of an applicant's character and fitness.

¶46  Admittedly, the Board did "not foreclose [Mr. Jarrett] from ever practicing law in Wisconsin."  He could, the Board said, take a bar examination pursuant to SCR 40.04.  But a majority of the court believes this option is not satisfactory on the facts of the case.

¶47  Mr. Jarrett graduated from the University of Wisconsin Law School in mid-2014.  He has been out of law school now for two years.  He presently lives in Maryland and works in a non-legal capacity in the District of Columbia.

¶48  To take the Wisconsin bar exam, Mr. Jarrett would have to come to Wisconsin, and he would likely have to enroll in a

1

Wisconsin bar review course to prepare for the examination. Passing the exam would reaffirm his legal competence——which is not in dispute——but it would not necessarily enhance his "character and fitness" or assure that the Board would grant him certification.

¶49 As an alternative, Mr. Jarrett could take a bar exam in the District of Columbia, Maryland, or his home state of Georgia. Superficially, one of these options might appear more convenient, but they would all be time consuming and costly and would not assure his admission in one of those jurisdictions so long as the denial of his Wisconsin admission remained unchanged.

¶50 In my view, the fundamental question facing the court is whether it is possible to permit Mr. Jarrett to practice law now, under reasonable conditions, without depreciating the seriousness of his misconduct. If we answer this question "yes," we risk criticism that we have damaged the reputation and integrity of the legal profession. If we answer the question "no," however, we may be precluding Mr. Jarrett from ever practicing law.

¶51 There may be risks in our decision. But intelligent risk-taking often yields spectacular rewards. I believe Mr. Jarrett has the ability to be a superb attorney, and he has demonstrated the desire to serve others. This court expects Mr. Jarrett to vindicate the high hopes we have in him. It will surely remember if he does not.

¶52 Courts cannot succeed for long if they are unable to leaven justice with mercy. By fashioning a unique form of

2

conditional admission, we practice that principle in the present case.

¶53  For the reasons stated, I respectfully concur in the opinion of the court.

¶54  I am authorized to state that Justice ANN WALSH BRADLEY and Justice REBECCA G. BRADLEY join this concurrence.

¶55 PATIENCE DRAKE ROGGENSACK, C.J. *(dissenting).* I would affirm the final decision of the Board of Bar Examiners (Board) declining to certify Joshua E. Jarrett's character and fitness for admission to the Wisconsin bar. I am persuaded by the Board's finding that Mr. Jarrett's conduct in connection with his efforts in 2012 to secure summer employment with the New York City Law Department was both dishonest and deceptive and that such conduct demonstrates that Mr. Jarrett has acted in a manner that is not honest, diligent, or reliable. Coupled with the Board's finding that Mr. Jarrett was not credible at the evidentiary hearing before the Board and when claiming he forgot to disclose three fairly recent separate speeding violations from Georgia, Kentucky, and Wisconsin, I conclude that there are simply too many incidents in which Mr. Jarrett considered the truth optional when it was not to his advantage.

¶56 Based on the record before this court, I am not persuaded that Mr. Jarrett has demonstrated the requisite moral character and fitness "needed to assure to a reasonable degree of certainty the integrity and the competence of services performed for clients and the maintenance of high standards in the administration of justice." SCR 40.06. I would affirm the Board's decision.

¶57 I am authorized to state that Justices ANNETTE KINGSLAND ZIEGLER and MICHAEL J. GABLEMAN join this dissent.

1