# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP1776-BA |
| COMPLETE TITLE: | In the Matter of the Bar Admission of Charles A. Nichols.<br><br>Charles A. Nichols,<br>          Petitioner,<br>     v.<br>Board of Bar Examiners,<br>          Respondent. |

BAR ADMISSION OF NICHOLS

| | |
|---|---|
| OPINION FILED: | June 2, 2017 |
| SUBMITTED ON BRIEFS: | February 20, 2017 |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | ABRAHAMSON, J. concurs, joined by A.W. Bradley, J. |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the petitioner, there were briefs filed by *Tamara B. Packard, A.J. Grund* and Pines Bach LLP, Madison.

For the Board of Bar Examiners, there was a brief filed by *Jacquelynn B. Rothstein*, Director & Legal Counsel.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2016AP1776-BA

STATE OF WISCONSIN          :          IN SUPREME COURT

**In the Matter of the Bar Admission of Charles A. Nichols:**

**Charles A. Nichols,**

                    **Petitioner,**

          **v.**

**Board of Bar Examiners,**

                    **Respondent.**

**FILED**

**JUN 2, 2017**

Diane M. Fremgen
Clerk of Supreme Court

---

          REVIEW of Board of Bar Examiners' decision.  *Decision reversed and remanded.*

          ¶1   PER CURIAM.   This is a review, pursuant to Supreme Court Rule (SCR) 40.08(7), of the final decision of the Board of Bar Examiners (Board) declining to certify that the petitioner, Charles A. Nichols, satisfied the character and fitness requirements for admission to the Wisconsin bar set forth in SCR 40.06(1).   The Board's refusal to certify that Mr. Nichols satisfied the character and fitness requirements for admission to the Wisconsin bar was based primarily on Mr. Nichols'

academic misconduct during his third year in law school and his failure to disclose certain matters on his bar application. After careful review, we reverse and remand the matter to the Board for further proceedings.

¶2 We appreciate the Board's concern regarding this applicant. We appreciate the thorough investigation the Board conducted into Mr. Nichols' background and past conduct. Mr. Nichols' application raised significant questions about his fitness to practice law. The duty to examine an applicant's qualifications for bar admission rests initially on the Board, and this court relies heavily on the Board's investigation and evaluation. In the final analysis, however, this court retains supervisory authority and has the ultimate responsibility for regulating admission to the Wisconsin bar. See In re Bar Admission of Rippl, 2002 WI 15, ¶3, 250 Wis. 2d 519, 639 N.W.2d 553, and In re Bar Admission of Vanderperren, 2003 WI 37, ¶2, 261 Wis. 2d 150, 661 N.W.2d 27.

¶3 While we understand the Board's decision, we conclude that the incidents the Board relied upon, while troubling, are sufficiently offset by positive character evidence to warrant our conclusion that Mr. Nichols may be admitted to the practice of law in Wisconsin, albeit with conditions. Accordingly, we reverse.

¶4 Mr. Nichols began law school at the University of Wisconsin in the fall of 2012. In the summer of 2014, Mr. Nichols obtained a summer internship with the Office of the Lieutenant Governor. This internship was unpaid, so Mr. Nichols

also worked nights and weekends at a restaurant, 35 to 40 hours per week. The Lieutenant Governor's office offered him a paid position at the end of the summer of 2014.

¶5 During the fall of 2014, his third year in law school, Mr. Nichols struggled to manage his work, volunteer service, and academic coursework. He began to neglect his academic work, including a Law of Democracy course. The grade for the course was almost solely based on a thirty-page research paper due at the end of the semester. The syllabus for the course stated that plagiarism would result in a failing grade.

¶6 Mr. Nichols submitted a final paper. The professor used an anti-plagiarism software program to check student papers. The report revealed that Mr. Nichols' final paper contained extensive language copied verbatim or nearly verbatim from four published law review articles, without citations. The repetition and nature of the matches led the professor to conclude that this could not have been coincidental. Mr. Nichols did not credit, in any form, the four law review articles from which he obtained the passages. The professor concluded that large portions of Mr. Nichols' final paper were plagiarized.

¶7 On January 15, 2015, the professor convened a meeting with Mr. Nichols, the director of student affairs, and an associate dean. When confronted with the apparent plagiarism, Mr. Nichols "told them immediately how he had developed the paper [with extensive cutting and pasting], and with complete

3

candor." Mr. Nichols admitted that his paper was "a mess" but said that he did not intentionally commit plagiarism.

¶8 The law school determined that Mr. Nichols had engaged in academic misconduct by submitting a paper that was copied in substantial part from several existing legal publications with no attribution in violation of UWS 14.03(1)(a).[1] This conclusion is reflected in a letter from the professor to Mr. Nichols, dated January 23, 2015:

> During our meeting, you confirmed that you drew material from these sources—in particular, the [law review] article. You further explained that your research and note-taking process involved cutting and pasting passages from [the law review article] and other sources, and you acknowledged that, in your rush to finish the paper, you may have (perhaps unintentionally) reproduced some of those passages without quotation marks, citations, or other attribution.

As a sanction, Mr. Nichols received a failing grade on the paper and in the course. The UW-Madison Dean of Students' Office also reviewed the matter and imposed an additional sanction, requiring Mr. Nichols to take an on-line course on academic integrity and research methods. Mr. Nichols did so, and passed the exam.

¶9 In the spring of 2015, his final year, Mr. Nichols failed his required Professional Responsibility course because

---

[1] UWS 14.03(1)(a) provides: "Academic misconduct is an act in which a student [s]eeks to claim credit for the work or efforts of another without authorization or citation."

he failed to comply with the attendance policy; a student who received more than three unexcused absences would fail the course. Mr. Nichols retook the course and graduated from law school in December 2015.

¶10 On March 23, 2015, Mr. Nichols submitted his bar application to the Board pursuant to the diploma privilege, SCR 40.03. He disclosed the academic misconduct. However, during the ensuing standard character and fitness review, the Board identified a number of discrepancies and omissions in his bar application, including:

- Mr. Nichols had failed to report three underage drinking citations on his law school application. He did report them on his bar application. Mr. Nichols later explained that he did not "intend to purposely mislead." He subsequently amended his law school application, and was informed the information would not have affected his admission.

- Mr. Nichols failed to include on his bar application information regarding a 2007 eviction case in which he was named as a party. He had no actual involvement in the case. A former roommate owed rent and all roommates were listed as parties to the action. The matter was resolved without Mr. Nichols' involvement.

- Mr. Nichols failed to disclose on his bar application that in 2008, he sought and obtained a restraining order against a former girlfriend, for her harassment of him.

- Mr. Nichols failed to include information on his bar application regarding a citation he received on March 18, 2009 for an alleged absolute sobriety violation. Mr. Nichols explained that the citation was dismissed because testing revealed no detectible level of alcohol.

5

Mr. Nichols amended his bar application on January 27, 2016 in response to the Board's inquiries. He said these omissions were accidental.

¶11 On April 11, 2016, the Board informed Mr. Nichols that his bar application was at risk of being denied for failing to establish his good moral character and fitness within the meaning of SCR 40.06(1) and Bar Admission Rule (BA) 6.01. Mr. Nichols requested a hearing.

¶12 The Board conducted a hearing on June 10, 2016, at which Mr. Nichols appeared and testified. He also offered character witnesses including his colleague and former supervisor Attorney Daniel Suhr, Chief of Staff and Legal Counsel to the Lieutenant Governor. Attorney Suhr stated he is "absolutely convinced that [Nichols] has the requisite integrity, diligence, and judgment to serve his clients and community well as an attorney in the State of Wisconsin." Professor Robert Yablon, the professor who identified Mr. Nichols' academic misconduct, also supported Mr. Nichols' admission to the bar, stating that he feels Mr. Nichols has been punished enough.

¶13 On August 4, 2016, the Board issued an adverse decision concluding that Mr. Nichols failed to establish good moral character and fitness to practice law in Wisconsin under SCR 40.06(1) and (3). The Board's decision stated, inter alia:

> In short, Mr. Nichols engaged in a blatant display of plagiarism. By submitting a paper in connection with his Law of Democracy course in which he failed to include four separate sources from which he quoted

6

extensively, and which accounted for over half of the paper, Mr. Nichols was both dishonest and deceptive. His conduct demonstrates that he is not honest, diligent, or reliable.

The very next semester, Mr. Nichols took Professional Responsibility, a required law school course, for which he received a failing grade. In the course syllabus, the attendance policy was outlined. According to Mr. Nichols, the policy stated that students who missed more than three (3) classes would receive a failing grade. Mr. Nichols readily conceded that he was aware of that professor's attendance policy but that he missed several classes because of "workload and stuff." Despite having been sanctioned for plagiarism the prior semester, Mr. Nichols still thought that the attendance policy was somehow "subject to change" and would therefore not be applicable to him. His attitude evinces a disregard for rules and authority, and is especially concerning given its close proximity to his plagiarism incident. It suggests a pattern of problematic behavior in which Mr. Nichols does not believe that certain rules and requirements apply to him.

Additionally, Mr. Nichols failed to disclose three underage drinking citations to the University of Wisconsin Law School which he reported on his bar application. In an amendment to his bar application, Mr. Nichols explained that because the citations no longer appeared on file in the county in which they were issued, he did not believe that he was required to report them. He went on to explain that "not having gone to law school and not knowing any attorneys" he "just missed" some things on his law school application. The Board did not find Mr. Nichols' explanation for failing to disclose the underage drinking citations to be persuasive.

Mr. Nichols also failed to disclose a citation for an absolute sobriety violation, and two civil actions. The first civil matter involved him filing a restraining order against a former girlfriend. The second involved an eviction matter. Mr. Nichols claimed that it was a "misunderstanding" on his part as to why he had not included them in his application to the bar. However, the Board did not find Mr. Nichols' explanations for failing to include these

7

items in his bar application to be credible or convincing.

It appears as if Mr. Nichols has engaged in a pattern of behavior in which he disregards certain rules and authority to suit his needs. Mr. Nichols' explanations about his academic misconduct in addition to his omissions on his bar application and his law school application were neither plausible nor believable. Thus, the Board did not find him to be a credible witness. Other than his employment, which Mr. Nichols seemed strongly focused upon—much to the detriment of his academic work, there does not appear to have been any other rehabilitative efforts on his part which would bolster or establish his required character or fitness for admission to the Wisconsin bar. Mr. Nichols' employment is not a sufficient demonstration of rehabilitation to offset his troubling conduct. Moreover, his academic misconduct occurred during his third year of law school, at which point he unquestionably should have known and understood the wrongfulness of committing plagiarism.

When his omissions are coupled with his plagiarism, a clear picture emerges wherein disclosures which are not to Mr. Nichols' advantage are necessarily withheld. Such conduct is of grave concern to the Board causing it to wonder how Mr. Nichols would prevent such behavior in the course of dealing with clients in a future legal practice.

****

Mr. Nichols' various explanations for engaging in conduct of this type are neither convincing nor persuasive. Mr. Nichols has minimized his behavior, providing excuses at every turn for his actions. He engaged in intentional and wrongful conduct which demonstrates a lack of character and fitness on his part.

(Record citations omitted). Mr. Nichols seeks this court's review.

¶14 Mr. Nichols first contends that several of the Board's findings are clearly erroneous and should be rejected by this

8

court. See In re Bar Admission of Rusch, 171 Wis. 2d 523, 528-29, 492 N.W.2d 153 (1992). He also contends that the Board's legal conclusions are not supported by the record evidence, and that this court must, after its de novo review, reject the Board's conclusions of law. See Rippl, 250 Wis. 2d 519, ¶16; In re Bar Admission of Crowe, 141 Wis. 2d 230, 232, 414 N.W.2d 41 (1987). He maintains that he has met his burden of producing information sufficient to affirmatively demonstrate his present character and fitness. He asks this court to reverse the Board's adverse decision.

¶15 When this court reviews an adverse determination of the Board pursuant to SCR 40.08(7), we adopt the Board's findings of fact if they are not clearly erroneous. In re Bar Admission of Vanderperren, 2003 WI 37, ¶20, 261 Wis. 2d 150, 661 N.W.2d 27. We then determine if the Board's conclusions of law based on those facts are proper. Id. This court retains the ultimate authority to determine who should be admitted to the bar in Wisconsin. While the Board's experience in administering the bar admission rules is appreciated, this court is obligated to make its legal determinations de novo. Rippl, 250 Wis. 2d 519, ¶¶13, 16.

¶16 We reject Mr. Nichols' assertion that the challenged Board findings are clearly erroneous. Mr. Nichols challenges the Board's factual finding that "[b]y submitting a plagiarized paper in connection with his Law of Democracy course, Mr. Nichols was both dishonest and deceptive." Mr. Nichols says that the record does not support the finding that he was ever

9

"dishonest" or "deceptive." He says that "nothing in the record supports the Board's contention that Mr. Nichols' conduct was intended to deceive or serves as evidence of dishonesty." He also disputes the Board's finding that he "minimized the significance of the misconduct in which he had engaged."

¶17 The Board stands by its findings. It found that Mr. Nichols was not credible when explaining his conduct and the omissions on his bar application at the hearing before the Board. The Board maintains that Mr. Nichols has consistently minimized the seriousness of his behavior and contends that this "record clearly reveals that Mr. Nichols has a serious credibility problem."

¶18 The Board's factual findings essentially derive from the facts of the undisputed underlying academic misconduct and omissions on his bar application, coupled with its own credibility determinations made at the Board hearing. We are disinclined to second guess credibility determinations made by factfinders. Nothing in this record suggests that it was "clearly erroneous" for the Board not to accept Mr. Nichols' explanations for his plagiarism or his failures to disclose certain matters on his bar application. The Board's factual findings, particularly those based on the Board's credibility determinations, have sufficient support and are not clearly erroneous.

¶19 We next evaluate the Board's conclusion that Mr. Nichols failed to satisfy the character and fitness requirements for admission to the Wisconsin bar.

10

¶20  The standards for evaluating an applicant's admission to the Wisconsin bar are well settled.  Supreme Court Rule 40.06(1) requires that applicants for bar admission establish good moral character and fitness to practice law.  The burden rests with the applicant to establish character and fitness to the satisfaction of the Board.  See SCRs 40.06(3) and 40.07. The Appendix to SCR Ch. 40 contains the Board's rules that provide additional guidance to the Board and to applicants.

¶21  Bar Admission 6.01 provides that "[a] lawyer should be one whose record of conduct justifies the trust of clients, adversaries, courts and others with respect to the professional duties owed to them."  That same section notes that "[a] record manifesting a deficiency in the honesty, diligence or reliability of an applicant may constitute a basis for denial of admission."

¶22  Bar Admission 6.02 provides that in determining whether an applicant possesses the necessary character and fitness to practice law, 12 factors "should be treated as cause for further inquiry."  BA 6.02 (Relevant Conduct or Condition). As relevant, these factors include a person's unlawful conduct, academic misconduct, false statements by the applicant, including concealment or nondisclosure, and acts involving dishonesty or misrepresentation.  See id.

¶23  Bar Admission 6.03 provides that in assigning weight and significance to the applicant's prior conduct, the following factors are to be considered:

(a) the applicant's age at the time of the conduct

11

(b) the recency of the conduct

(c) the reliability of the information concerning the conduct

(d) the seriousness of the conduct

(e) the mitigating or aggravating circumstances

(f) the evidence of rehabilitation

(g) the applicant's candor in the admissions process

(h) the materiality of any omissions or misrepresentations

(i) the number of incidents revealing deficiencies

See SCR 40 app., BA 6.03.

¶24 When conducting our de novo review, we, like the Board, use the guidelines established in BA 6.02 and BA 6.03.

¶25 Although both parties address each of these factors, the crux of Mr. Nichols' argument is that he committed a "single instance of academic misconduct that developed from carelessness, not intent." He concedes this was serious but contends that it is not substantial enough to warrant denial of his admission to the bar. He claims that the Board "ignored" other relevant evidence that reflects his good character, such as his positive character references from employers.

¶26 The Board maintains that it considered all facets of Mr. Nichols' application. It observes that most of Mr. Nichols' positive conduct is linked to his recent employment. The Board determined that his negative conduct, coupled with his lack of candor and credibility, substantially outweighed his positive conduct. Contrary to certain assertions in Mr. Nichols' brief, the Board does not seek to forever bar Mr. Nichols from

admission to the practice of law in Wisconsin. The Board suggests he could reapply pursuant to SCR 40.04 after a year. The court has used this or a similar mechanism in the past, typically when the court deemed it appropriate to defer an applicant's admission. See, e.g., In re Bar Admission of Gaylord, 155 Wis. 2d 816, 456 N.W.2d 590 (1990); In re Bar Admission of Saganski, 226 Wis. 2d 678, 78-80, 595 N.W.2d 631 (1999).

¶27 Mr. Nichols argues that the Board's adverse determination is inconsistent with this court's resolution of other bar admission cases, most notably and recently, In re Bar Admission of Jarrett, 2016 WI 39, 368 Wis. 2d 567, 879 N.W.2d 116. See also, In re Bar Admission of Anderson, 2006 WI 57, ¶26, 290 Wis. 2d 722, 715 N.W.2d 586; Vanderperren, 261 Wis. 2d 150, ¶65; Rippl, 250 Wis. 2d 519.

¶28 The most factually analogous case is our recent decision in Jarrett. Mr. Jarrett committed academic misconduct after his first year in law school. He sent a resume and unofficial transcript to a potential employer, containing false information and inflated grades. Jarrett, 2016 WI 39, ¶6. Mr. Jarrett also failed to disclose in his bar application that he had received several traffic violations. This court ultimately opted to admit Mr. Jarrett, with conditions.

¶29 Here, as in Jarrett, we emphasize that the Board acted reasonably in questioning Mr. Nichols' character and fitness, and conducted its review in accordance with the established standards. Bar Admission 6.02 provides that both academic

13

misconduct and false statements (including nondisclosure) "should be treated as cause for further inquiry." (Emphasis added.) The record reflects that the Board considered the factors set forth in BA 6.03; particularly the recency of the conduct, which occurred during his final year of law school, (6.03(b)), its seriousness (6.03(d)), and the applicant's candor in the admissions process (6.03(g)). See SCR 40 app, BA 6.03 (a)-(i). The Board expressed very reasonable concern about a pattern "wherein disclosures which are not to Mr. Nichols' advantage are necessarily withheld." The Board explicitly found that "Nichols' employment is not a sufficient demonstration of rehabilitation to offset his troubling conduct."

¶30 The Board serves the critically important role as a gatekeeper to admission to the bar. The Board was right to be deeply concerned by Mr. Nichols' record. Still, as in Jarrett, this court has reviewed this record and has opted to afford this applicant the benefit of the doubt. We conclude that Mr. Nichols can be admitted to the practice of law, subject to the imposition of certain conditions.[2] In reaching this conclusion we are influenced by the fact that employers who work closely with Mr. Nichols speak highly of him as an individual, and of his work ethic. The omissions on his bar application were careless, but the items omitted do not, themselves, reflect

---

[2] We accept the Board's determination that conditional admission pursuant to SCR 40.075(1) was not appropriate here. This does not preclude this court from imposing its own conditions on Mr. Nichols' license to practice law.

14

poorly on Mr. Nichols' character. We are also influenced by the fact that the professor of the class in which Mr. Nichols committed academic misconduct supports his admission to the bar. The professor noted that Mr. Nichols had been "forthright in acknowledging his errors and accepting responsibility," and that he seems genuinely contrite. The professor noted further that Mr. Nichols "has paid a real price for his actions, with an F on his transcript and his misconduct made the admission process vastly more time consuming, expensive, and stressful."

¶31 Accordingly, we direct the Board to certify Mr. Nichols' admission to practice law in Wisconsin. Mr. Nichols' admission to the practice of law in Wisconsin is contingent on his compliance with certain requirements set forth in this decision as well as certain conditions on his license to practice law.

¶32 We direct the Office of Lawyer Regulation (OLR) to identify and appoint a practice monitor to serve as a mentor to Mr. Nichols and to supervise and oversee Mr. Nichols' practice of law and related professional activities for a period of two years following the practice monitor's appointment. The practice monitor shall be licensed to practice law in Wisconsin and be located in the region of Mr. Nichols' place of employment or residence.

¶33 Upon Mr. Nichols' admission to the practice of law in Wisconsin and his enrollment with the State Bar of Wisconsin pursuant to SCR 10.03(2), Mr. Nichols is directed to initially elect inactive membership status. See SCR 10.03(3)(a). This

15

will afford the OLR time to identify a practice monitor and will obviate the need for Mr. Nichols to bear the costs and obligations of monitoring before he assumes the active practice of law.

¶34 When the OLR advises Mr. Nichols that a practice monitor has been identified, Mr. Nichols shall execute a written monitoring agreement setting forth the terms of Mr. Nichols' monitoring as determined by the practice monitor. Mr. Nichols may then, with written notice to the OLR, change his classification to active status by complying with SCR 10.03(3)(b)1. The formal appointment date of the monitor will be the date Mr. Nichols elects active membership in the State Bar pursuant to SCR 10.03(3)(b)1.

¶35 We direct Mr. Nichols to cooperate with the OLR, cooperate with his practice monitor, and comply with all requirements imposed upon him by the OLR relating to his monitoring. Mr. Nichols shall comply with all reasonable requests of his practice monitor and shall bear the reasonable costs of monitoring.[3]

¶36 Upon appointment, the monitor shall report to the OLR, in writing, on a quarterly basis. Within thirty days prior to

---

[3] Lawyer monitoring often requires a lawyer to undergo an AODA (alcohol and other drug abuse) assessment and/or psychological evaluation. The record in this case does not appear to warrant such conditions and they should not be imposed here. In the event such conditions appear necessary, the OLR shall provide Mr. Nichols with notice and an opportunity to be heard.

16

the expiration of the two-year monitoring period, the OLR shall file a report in this court in which it shall recommend to the court that the conditions on Mr. Nichols' admission be allowed to terminate or be extended.

¶37  Should Mr. Nichols fail to make a good faith effort to satisfy these conditions, or should he commit misconduct during the monitoring period, his license to practice law may be suspended or revoked and he may be subject to other discipline pursuant to the Rules of Professional Conduct for Attorneys.

¶38  IT IS ORDERED that the decision of the Board of Bar Examiners declining to certify that Charles A. Nichols has satisfied the requirements for admission to the practice of law in Wisconsin is reversed and the matter is remanded to the Board for further action consistent with this decision.

¶39  IT IS FURTHER ORDERED that Charles A. Nichols shall comply with the directives set forth in this decision and shall, promptly upon receipt of this decision, provide the Office of Lawyer Regulation with a copy of the entire record in this matter and authorize the OLR to share the record with the practice monitor.

¶40  IT IS FURTHER ORDERED that subject to the required disclosures to the Office of Lawyer Regulation and practice monitor as set forth herein, the documents submitted under seal are deemed confidential, and will be maintained under seal until further order of the court.

¶41 SHIRLEY S. ABRAHAMSON, J. *(concurring).* I write separately to provide some context for ¶40 of this opinion, which may be confusing for those who are not thoroughly conversant with our court rules. The paragraph provides that, "subject to the required disclosures to the Office of Lawyer Regulation and practice monitor as set forth herein, the documents submitted under seal are deemed confidential, and will be maintained under seal until further order of the court."

¶42 Persons seeking admission to practice law in Wisconsin must file an application with the Board of Bar Examiners (BBE). See SCR 40.14. The information an applicant must disclose to the BBE is extensive and some of it is highly personal. For this reason, SCR 40.12 provides that the "application files of an applicant and all examination materials are confidential. The supreme court or the board may authorize the release of confidential information to other persons or agencies."

¶43 When an applicant asks this court to review an adverse determination from the BBE, SCR 40.08(7), the record submitted to this court typically contains the applicant's bar application and related documents, which comprise the "application file." Consistent with our rule, material from the application file is confidential and is not available to the public, absent a court order. In this matter, the applicant, himself, voluntarily opted to include in the appendix to his appellate brief some items from his bar application, including certain amendments to his bar application. When an applicant does not file

1

confidential material under seal with this court, a question may arise whether confidentiality is waived.

¶44 I am authorized to state that Justice ANN WALSH BRADLEY joins this concurrence.

2