IN the MATTER OF the BAR ADMISSION OF Nicholas Thomas SAGANSKI:

Nicholas Thomas SAGANSKI, Petitioner,

v.

BOARD OF BAR EXAMINERS, Respondent.

Supreme Court

*No. 98–2487–BA. Oral argument April 9, 1999.—Decided June 15, 1999.*

(Also reported in 595 N.W.2d 631.)

For the petitioner there were briefs by *Gordon E. McQuillen* and *Cullen, Weston, Pines & Bach*, Madison and oral argument by *Gordon E. McQuillen.*

For the respondent the cause was argued by *Alan Lee*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1.   PER CURIAM.   We review the decision of the Board of Bar Examiners (Board) declining to certify the character and fitness of Nicholas T. Saganski to practice law in Wisconsin.[1] Mr. Saganski contended that the Board's determination that he failed to establish good moral character and fitness to practice law was based improperly on four findings of fact it made: (1) he received several citations from the housing authorities for alcohol and noise violations and a disorderly conduct violation while a dormitory resident at the University of Wisconsin - Madison but disclosed only the disorderly conduct violation on his application to the UW Law School; (2) he received numerous municipal citations for furnishing alcoholic beverages to underage persons at a party he co-hosted; (3) he was convicted of disorderly conduct following an altercation

---

[1] SCR 40.06 provides, in pertinent part:

**Requirement as to character and fitness to practice law.**

(1)   An applicant for bar admission shall establish good moral character and fitness to practice law. The purpose of this requirement is to limit admission to those applicants found to have the qualities of character and fitness needed to assure to a reasonable degree of certainty the integrity and the competence of services performed for clients and the maintenance of high standards in the administration of justice.

(3)   An applicant shall establish to the satisfaction of the board that the applicant satisfies the requirement set forth in sub. (1). The board shall certify to the supreme court the character and fitness of qualifying applicants. The board shall decline to certify the character and fitness of an applicant who knowingly makes a materially false statement of material fact or who fails to disclose a fact necessary to correct a misapprehension known by the applicant to have arisen in connection with his or her application.

outside a bar, during which he threatened a police officer; (4) he explained those incidents to the Board "in a manner which denied or minimized his culpability or responsibility for them," and his statement of the facts surrounding the disorderly conduct conviction was "so at variance with all other contemporaneous statements [concerning the incident] as to be incredible."

¶ 2. Mr. Saganski contended further that the Board failed to take into account all of the factors set forth in its administrative rule, BA 6.03, that should be considered in assigning weight and significance to a bar admission applicant's prior conduct. Those factors are the applicant's age at the time of the conduct, how recently it occurred, its seriousness, the reliability of information concerning it, mitigating or aggravating circumstances, evidence of rehabilitation, the applicant's candor in the admissions process, the materiality of any omissions or misrepresentations, and the number of incidents revealing deficiencies.

¶ 3. Because we determine that the Board's findings are sufficient to support its determination that Mr. Saganski failed to meet his burden of establishing the necessary character and fitness to be admitted to the practice of law and that the Board properly considered the factors applicable to his conduct, we affirm the decision of the Board. We determine further that Mr. Saganski's prior conduct and his description of it in the bar admission process were not of sufficient seriousness to constitute a permanent impediment to his being admitted to the bar. Consequently, he may reapply for bar admission after one year from the date of the Board's decision, during which time he will have the opportunity to demonstrate that he possesses the necessary character and fitness for admission.

¶ 4. Following graduation from UW Law School in August 1996, Mr. Saganski applied for bar admission in October 1997. The Board issued a preliminary decision April 13, 1998, notifying him of its intention to decline to certify his satisfaction of the character and fitness admission requirement based on the following.

¶ 5. (1) He was involved in an altercation outside a bar in August 1995, as a result of which he was charged with and later pleaded no contest to disorderly conduct, for which he was fined $147.

¶ 6. (2) In October 1991 he hosted a party at his residence at which those attending purchased a cup to obtain alcoholic beverages. The police gave him 21 citations for providing alcoholic beverage to underage persons. Those citations ultimately were reduced to three charges, to which he pleaded no contest, and he paid approximately $2000 in forfeitures.

¶ 7. (3) He received at least five citations for alcohol violations, at least two citations for noise violations, and one citation for disorderly conduct from university housing authorities during the three years he lived in dormitory housing while an undergraduate. He disclosed only one of them—the disorderly conduct citation—on his law school admission application.

¶ 8. (4) He made "incomplete and untruthful disclosure" of the foregoing incidents on his bar admission application.

¶ 9. Expressing concern with what it termed "the substantial disparity between [his] version of the facts relating to the [1995 disorderly conduct] incident and statements collected by and given by the police," the Board said in its notification letter, "You minimized your culpability and responsibility and asserted that you were provoked when you involved yourself with an on-going disturbance." The Board added,

. . .Although the Board does not believe that your 1995 nor your 1991 convictions nor your selective disclosure to the Law School individually or together disqualify you from admission to the bar, the Board finds that your explanations of the events leading to those convictions, coupled with your accounts of them and of the conduct associated with them raise substantial doubt that you will maintain the high standards in the administration of justice which are required of Wisconsin attorneys. . . .

¶ 10.  The letter informed Mr. Saganski of his right to contest its decision and respond to the Board, noting that if he wanted a hearing before the Board, he had to request one specifically in writing, demonstrating that there were facts bearing on his case that could not be presented in writing. Mr. Saganski filed a lengthy response and requested a hearing "because of the inherent ambiguities in some of the concerns" articulated in the Board's letter and so that he could be heard about those concerns. While noting that the Board usually does not hold a hearing if the information sought to be provided can be presented in writing, Mr. Saganski wrote, "I feel the need to have a direct dialogue with the Board so that its members can see that I am not attempting to conceal or mislead the Board." The Board denied the request for a hearing on the ground that Mr. Saganski failed to show, as required by the rules, that there were facts bearing on his case that could not be presented in writing.

¶ 11.  At oral argument in this review, counsel for the Board asserted that the Board was prohibited from granting Mr. Saganski's request for a hearing by the mandatory language of SCR 40.08(2): "The board shall grant a hearing to an applicant only upon a showing that there are facts bearing on the applicant's case that

cannot be presented in writing. . . . ." While that rule may be sound in respect to objective facts, if followed literally, it might prevent the Board from reaching an informed determination on facts not susceptible of objective determination, such as the applicant's sincerity, remorse and other matters for which a written submission would not be an adequate substitute for the applicant's appearance before the Board. Accordingly, we direct the Board to consider the operation of that rule in this respect and, if it is deemed necessary or appropriate, that it propose its amendment.

¶ 12. Following its preliminary decision, the Board issued findings of fact, conclusions of law and its determination July 29, 1998 declining to certify that Mr. Saganski satisfied the requirements for admission to the bar. The Board specifically concluded that he failed to meet the character and fitness requirement under SCR 40.06(1), that his unlawful conduct and incomplete and untruthful disclosure are relevant to his character and fitness, and that his explanation of the incidents in a manner that denied or minimized his culpability or responsibility for them was to be given weight.

¶ 13. In this review, Mr. Saganski noted correctly that his application to law school required information only about charges or convictions that were criminal, while the bar admission application specified civil or criminal violations. That distinction is irrelevant, however, to his failure to disclose on his law school application at least seven citations he received from the university housing authorities while an undergraduate. His response in that regard was to a different question—whether he ever had been "dropped, suspended, expelled, placed on probation or otherwise disciplined by any college, university or law school

either for academic or other reasons." To his affirmative response he added, "Placed on housing probation for minor fistfight in UW - Madison dorms in April of 1991." We find without merit Mr. Saganski's contention that because he subsequently was admitted to law school and completed its program, he was justified in concluding that his other housing problems did not constitute an impediment to his admission to practice law.

¶ 14. Likewise without merit is Mr. Saganski's assertion that in respect to the underage alcohol ordinance citations received in connection with the party he co-hosted, he gave more information on the law school admission form than was required, as that conduct was not criminal in nature, and that denial of bar admission on the basis of that response would constitute penalizing him for something he volunteered. Regardless of whether those citations had to be disclosed on the law school form, he was required to disclose civil law arrests, charges, and convictions and ordinance violations on the bar admission form.

¶ 15. In respect to the 1995 disorderly conduct conviction, Mr. Saganski denied that he attempted to minimize or deny his culpability in the incident but merely presented his view of what had occurred. He stated that he grabbed the door, held it open, pointed to the employees, and demanded to see the manager. Contrary to his characterization of that conduct as "relatively benign," the police reported the bar employee's statement that Mr. Saganski charged the front door, shouted at him, charged the door a second time, and forced his fist and arms through the opening. The employee was reported to be especially disturbed by Mr. Saganski's "unprovoked and particularly violent" attack. As to his culpability for that incident, we

are not persuaded by Mr. Saganski's assertion that his no contest plea and payment of a fine constitute his acknowledgment of culpability.

¶ 16. In response to the Board's finding that he threatened a police officer in connection with that incident,[2] Mr. Saganski asserted that there was no evidence that the officer took his conduct as a threat and that he was not charged with the crime of threatening a police officer. The Board properly rejected Mr. Saganski's attempt to explain away that threat by asserting that he meant merely that he "fully intended to challenge the citation in court as vigorously as possible because the officer's conclusions about the situation were grossly flawed."

¶ 17. The Board's finding that Mr. Saganski attempted to explain his conduct in these matters in a manner that denied or minimized his culpability or responsibility for it was based on the following. He disclosed only one "minor fistfight" on the law school admission application, and when asked to explain that incident by the Board, he set forth the other housing citations he received, terming them citations "given out quite frequently to residents and rather sloppily." Moreover, on his bar admission application, the "minor fistfight" became a "shoving match."

¶ 18. In addition, Mr. Saganski reported his citations for providing alcohol to underage persons as being fined as only one of five persons holding a beer party, explaining that the citations resulted from enforcement of the 21-year-old drinking age, "which [he] opposed," "during the police department's 'Opera-

---

[2] One of the police officers reported: "Saganski told me that he was a law student, and he intended to make my life miserable. He stated he would do everything he could to make this the worst experience of my life."

tion Sting,' which [he] considered unfair." He stated that he was the one who received the 21 citations because he also was cited for marijuana possession, a charge that was subsequently dismissed. Finally, his explanation of the altercation at the bar, while conceding the truthfulness of the officers' reports, sought to blame others for it and questioned the accuracy of one of the police reports as it concerned him.

¶ 19.   We affirm the Board's decision declining to certify Mr. Saganski for bar admission on the ground of his having failed to establish the requisite character and fitness to practice law. The findings on which that decision is based have not been shown to be clearly erroneous, and their cumulative effect provides sufficient support for the Board's determination.

¶ 20.   In this review Mr. Saganski asked the court itself to certify his character and fitness to practice law or remand the matter to the Board for reconsideration. As an alternative, he requested permission to reapply for bar admission one year from the date of his October 1997 application. The Board expressed no position on that alternative.

¶ 21.   As we did in *Matter of Bar Admission of Gaylord*, 155 Wis. 2d 816, 456 N.W.2d 590 (1990), we determine that a one-year period is the appropriate time for Mr. Saganski to wait before reapplying for bar admission. Here, however, that time period commences the date of the Board's adverse decision in respect to Mr. Saganski's character and fitness—July 29, 1998.

*By the Court.*—The decision of the Board of Bar Examiners is affirmed.

¶ 22.   ANN WALSH BRADLEY, J., withdrew from participation.