# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP644-BA |
| COMPLETE TITLE: | In the Matter of the Bar Admission of Daniel R. Hausserman:<br><br>Daniel R. Hausserman,<br>          Petitioner,<br>     v.<br>Board of Bar Examiners,<br>          Respondent. |

BAR ADMISSION OF HAUSSERMAN

| | |
|---|---|
| OPINION FILED: | December 28, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 29, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the petitioner there, was an oral argument by *Terry E. Johnson* and *Von Briesen & Roper*, Milwaukee.

For the Board of Bar Examiners, there was an oral argument by *Jacquelynn B. Rothstein*, Director & Legal Counsel.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2018AP644-BA

STATE OF WISCONSIN                    :        IN SUPREME COURT

**In the Matter of the Bar Admission of Daniel R. Hausserman:**

**Daniel R. Hausserman,**

          **Petitioner,**

     **v.**

**Board of Bar Examiners,**

          **Respondent.**

**FILED**

**DEC 28, 2018**

Sheila T. Reiff
Clerk of Supreme Court

---

Review of Board of Bar Examiners' decision.   *Decision affirmed.*


¶1   PER CURIAM.   This is a review, pursuant to Supreme Court Rule (SCR) 40.08(7), of the final decision of the Board of Bar Examiners (Board) declining to certify that the petitioner, Daniel R. Hausserman, satisfied the character and fitness requirements for admission to the Wisconsin bar set forth in SCR 40.06(1).   The Board's decision was based primarily on Mr. Hausserman's conduct in 2015, and his failure to disclose certain matters on his bar application.

¶2    After careful review, we agree that the record before us is insufficient to persuade us that Mr. Hausserman should be admitted to the practice of law at this time.  Accordingly, we affirm.

¶3    There are, essentially, two concerns here.  The most significant involves Mr. Hausserman's conduct over a period of approximately seven months during and after his final year of law school.  The other involves certain shortcomings with his application for admission to the Wisconsin bar.

¶4    The standards for evaluating whether an applicant should be admitted to the Wisconsin bar are well settled.  Supreme Court Rule 40.06(1)[1] requires that applicants for bar admission establish good moral character and fitness to practice law.  The burden rests with the applicant to establish character and fitness to the satisfaction of the Board.  See SCR 40.06(3) and SCR 40.07.  The Appendix to SCR Ch. 40 contains the Board's rules that provide additional guidance to the Board and to applicants.

---

[1] SCR 40.06(1) provides:

An applicant for bar admission shall establish good moral character and fitness to practice law. The purpose of this requirement is to limit admission to those applicants found to have the qualities of character and fitness needed to assure to a reasonable degree of certainty the integrity and the competence of services performed for clients and the maintenance of high standards in the administration of justice.

2

¶5 Bar Admission Rule (BA) 6.01 provides that "[a] lawyer should be one whose record of conduct justifies the trust of clients, adversaries, courts and others with respect to the professional duties owed to them." That same section notes that "[a] record manifesting a deficiency in the honesty, diligence or reliability of an applicant may constitute a basis for denial of admission."

¶6 Bar Admission Rule 6.02 provides that in determining whether an applicant possesses the necessary character and fitness to practice law, there are 12 factors that are "cause for further inquiry." Several of these factors are implicated here, including unlawful conduct, violation of an order of a court, denial of admission to the bar in another jurisdiction on character and fitness grounds, and concealment or nondisclosure of information during the bar application process. See id. at BA 6.02(a), (c), (h), and (k).

¶7 Bar Admission Rule 6.03 provides that in assigning weight and significance to the applicant's prior conduct, the following factors are to be considered:

    (a) the applicant's age at the time of the conduct

    (b) the recency of the conduct

    (c) the reliability of the information concerning the conduct

    (d) the seriousness of the conduct

    (e) the mitigating or aggravating circumstances

    (f) the evidence of rehabilitation

    (g) the applicant's candor in the admissions process

3

(h) the materiality of any omissions or misrepresentations and

(i) the number of incidents revealing deficiencies.

SCR Ch. 40 App., BA 6.03.

¶8 When, as here, we review an adverse determination, the court adopts the Board's findings of fact that are not clearly erroneous. In re Bar Admission of Rippl, 2002 WI 15, ¶16, 250 Wis. 2d 519, 639 N.W.2d 553. The court then determines, de novo, whether the Board's conclusions of law, based on the non-erroneous facts, are proper. When conducting our de novo review, we, like the Board, use the guidelines established in BA 6.01-BA 6.03.

¶9 We have, as counsel for Mr. Hausserman urged, focused carefully on the facts of this record. Mr. Hausserman attended Drake University Law School. In February 2014, when he was 25 and in law school, Mr. Hausserman met B.F., a Drake University undergraduate student, and they began dating. The relationship was serious. In December 2014 the relationship ended. Some communication continued, however, and Mr. Hausserman thought the relationship would resume.

¶10 On March 5, 2015, B.F. filed a complaint with Drake University stating that she was receiving unwanted communications from Mr. Hausserman. Mr. Hausserman's actions between March and September 2015 are the primary reason his Wisconsin bar application was denied.

¶11 On March 9, 2015, Drake University officials advised Mr. Hausserman of the complaint and directed him to cease any

further contact with B.F. Within two weeks Mr. Hausserman had contacted B.F. by email at least twice. On March 27, 2015, Mr. Hausserman sent B.F. three more emails and had called her.

¶12 On March 30, 2015, Drake University again directed Mr. Hausserman to have no contact with B.F. On April 2, 2015, following a meeting between University officials and Mr. Hausserman, the University sent a letter to Mr. Hausserman stating that he had violated the harassment provision of the school's code of conduct. Mr. Hausserman was barred from campus except for his academic classes.

¶13 On April 15, 2015, Mr. Hausserman sent B.F. another email which began: "I am aware this is in violation of the no communication/contact order and places me at risk of certain arrest." Two days later and in an apparent attempt to reach B.F., Mr. Hausserman sent a text message to her mother, also in violation of Drake University's no-contact directive. Thereafter, Mr. Hausserman was banned from the University except for completing his final exams and attending his graduation ceremony. He was advised that after his law school graduation, he would be barred indefinitely from the university campus.

¶14 On May 16, 2015, hours after his law school graduation, Mr. Hausserman left B.F. a telephone message. B.F. contacted the City of Des Moines Police Department.

¶15 A few days later, the police spoke with Mr. Hausserman, who said that he thought his graduation terminated the restrictions on communicating with B.F. The police told him to cease all contact with B.F. and warned him

that if he violated that directive he would be criminally charged. Approximately one week later, B.F. contacted the City of Des Moines Police Department again, to report that Mr. Hausserman had sent her several more text messages.

¶16 On May 28, 2015, Mr. Hausserman was criminally charged in Iowa with Harassment in the Third Degree. He pled guilty in June of 2015 and received a deferred judgment, was placed on probation for 12 months, and ordered to have no contact with B.F.

¶17 Meanwhile, Mr. Hausserman had graduated and applied for admission to the Iowa bar. At that time, however, the aforementioned criminal charges were pending against him and, following a hearing, the Iowa Board of Law Examiners (Iowa Board) concluded, on June 17, 2015, that Mr. Hausserman had not met his burden of demonstrating his character and fitness for admission to the Iowa bar. He was not permitted to take the Iowa Bar Exam. The Iowa Board apparently indicated that Mr. Hausserman might be permitted to sit for the Iowa Bar Exam in the future, when he could demonstrate that his harassment of B.F. had truly ended. A behavioral health evaluation was recommended. In its June 17, 2015 decision, the Iowa Board stated:

> An objective observer might find the above course of events would have sent a crystal-clear message for Mr. Hausserman to leave [B.F.] alone. Instead, Mr. Hausserman relentlessly continued contacting [B.F.] (and in one instance, her parents) in violation of the no contact orders. The board also notes that a good deal of this conduct occurred just before, and even

6

after, he filed his bar application. Mr. Hausserman continued to pursue this course of aberrant behavior come what may. Mr. Hausserman did acknowledge the criminal prosecution had gotten his attention, but he evinced no hint of remorse at the board interview and certainly did not suggest the course of conduct had come to an end.

(R. at 51).

¶18 In late September 2015, B.F. reported to police that she had received a Snapchat friend request from Mr. Hausserman. Following an interview with police, Mr. Hausserman admitted that he had contacted B.F. again because he had reason to believe she was involved in derogatory internet postings about him, and he wanted to discuss that with her. He acknowledged this action violated the terms of his deferred judgment. He was arrested and his home searched. He was found to be in possession of four firearms, two of which were loaded, in violation of his deferred prosecution agreement.[2]

¶19 Mr. Hausserman was found in contempt of court, sentenced to 30 days in jail, given a year of probation and supervision, and ordered to complete a mental health assessment. The mental health evaluation revealed no drug or alcohol issues, but recommended that Mr. Hausserman undergo treatment to address

---

[2] Mr. Hausserman explained at his Board hearing that he is a sportsman, purchased the guns legally, and practices at a gun range.

his behavior.[3] The record indicates that Mr. Hausserman has not attempted any further contact with B.F. since September 2015.

¶20 In November 2015, Mr. Hausserman first applied for admission to the Wisconsin bar. Some delays that are not relevant followed. In February 2017 he passed the Wisconsin Bar Exam. On September 19, 2017, the Board informed Mr. Hausserman that his bar application was "at risk" of denial for failing to establish his good moral character and fitness within the meaning of SCR 40.06(1) and BA 6.01. SCR 40.08(1). The Board's concerns were not based solely on his conduct with B.F. The Board also expressed concern about inadequate disclosures on his Wisconsin bar application.

¶21 When Mr. Hausserman first applied to take the Wisconsin Bar Exam in November 2015, he responded affirmatively to Question 20 which asks, in part, whether the applicant has been disciplined or placed on probation by a law school. Mr. Hausserman explained that he had been placed on academic probation for one semester. He failed to disclose the restrictions Drake University imposed on him related to B.F.[4]

---

[3] Mr. Hausserman has cited cost as a barrier to seeking counseling as well as concerns that it might be perceived as something undertaken merely to bolster his bar application.

[4] By correspondence dated January 16, 2016, the Board directed Mr. Hausserman to amend his application and explain why he failed to reveal his misconduct with B.F. Mr. Hausserman did not file the requested amendment, but did include information about B.F. on a subsequent bar application.

¶22 When asked to explain his harassment conviction, Mr. Hausserman's answer was this: "[B.F.] made a criminal complaint against me. The complaint was based on text messages received from my number and emails received from my [email] address."

¶23 Mr. Hausserman disclosed an underage drinking ticket from 2007 and a 2012 citation for failing to have proof of automobile insurance in connection with a traffic stop. However, the Board was troubled by his description of these events. He explained the ticket this way: while at a Badger football game he was "grabbed by police because he had one foot on the sidewalk." He explained the traffic citation like this: he was driving his father's car and was pulled over because "police don't like young kids driving nice cars."

¶24 Mr. Hausserman failed to report an incident from 2003 (when he was 15) in which he and a friend were cited for destroying a mailbox. He had reported the incident on his law school application.

¶25 Upon receipt of the Board's intent to deny letter, Mr. Hausserman exercised his right to request a hearing, which the Board conducted on January 19, 2018. Mr. Hausserman appeared by counsel and testified. On March 7, 2018, the Board issued an adverse decision concluding that Mr. Hausserman had failed to establish good moral character and fitness to practice law in Wisconsin under SCR 40.06(1) and (3).

¶26 Mr. Hausserman seeks this court's review. This court retains supervisory authority and has the ultimate

9

responsibility for regulatory admission to the Wisconsin bar. Rippl, 250 Wis. 2d 519. Mr. Hausserman argues that he has met his burden of producing information sufficient to affirmatively demonstrate his present character and fitness appropriate for bar admission. BA 6.01. He asks this court to reverse the Board's adverse decision and permit him to become a member of the Wisconsin bar. He indicates that he would accept conditions that this court might impose on his law practice.[5]

---

[5] The parties both noted that the Board declined to offer Mr. Hausserman conditional admission pursuant to SCR 40.075(1). We accept the Board's determination that conditional admission pursuant to SCR 40.075(1) was not appropriate here.

There is a difference between "conditional admission" and "admission with conditions." "Conditional admission" is an option set forth in SCR 40.075 that the Board may offer to certain applicants. This option requires the applicant enter a contract in which the applicant agrees to abide by certain conditions during the initial years of law practice. For example, an applicant with a record of substance abuse who can document ongoing recovery might agree to maintain sobriety and submit to random chemical testing for a period of time. Conditional admission is confidential. If the applicant successfully completes the terms of the contract, the conditions expire.

"Admission with conditions" may occur if the Board renders an adverse determination and the applicant seeks supreme court review. If this court determines that the applicant has sufficiently satisfied character and fitness requirements, this court may order the Board to certify the applicant for admission. The court may also impose certain conditions on the applicant's practice of law, typically for a limited period of time. These conditions are imposed by the court, as opposed to the Board, and are a matter of public record. See, e.g., In re Bar Admission of Jarrett, 2016 WI 39, 368 Wis. 2d 567, 879 N.W.2d 116.

¶27 The Board maintains that Mr. Hausserman's defiance of law school officials, the police, and a court order reflects a repeated and blatant disregard for authority and the rule of law that should preclude his admission to practice law.  Although Mr. Hausserman took issue with the Board's characterization of certain matters at oral argument, the underlying facts are not really in dispute.  Mr. Hausserman says that what occurred in 2015 was a brief, unfortunate, emotional episode in his life that is not likely to recur and does not adversely reflect on his ability to practice law.  He emphasizes that his record reflects no issues with honesty, probity, or truthfulness.  He suggests that however wrongful his behavior with B.F. may have been, it involved motivations and circumstances "which are entirely unrelated to the practice of law."

¶28 Mr. Hausserman acknowledges that he could have been more forthcoming on his bar application, but says he thought the Board had received all of the information because he had supplied his entire student record.  He disputes the Board's conclusion with respect to character, arguing that while that is no excuse for the mistakes he made, the circumstances underlying Mr. Hausserman's behavior should have been considered in assessing whether his conduct bears on his character and fitness to practice law.  He argues that the Board did not give weight to Mr. Hausserman's explanation for his actions.

¶29 Mr. Hausserman argues that the Board's conclusion of law is not supported by the record and, moreover, is inconsistent with this court's resolution of other bar admission

11

cases. Mr. Hausserman correctly reminds this court that we have, on occasion, overruled the Board and admitted certain applicants despite troubling conduct.

¶30 We have carefully reviewed the facts of these unique cases and have concluded that, on the record before us, Mr. Hausserman cannot be admitted to their ranks.

¶31 The facts of these cases vary greatly. One applicant had been convicted of theft in college and also admitted taking personal items from an employer. She had multiple unpaid traffic tickets and an ordinance citation for disorderly conduct that occurred during her third year of law school. Rippl, 250 Wis. 2d 519. Her eventual admission by this court was predicated on evidence that she had undergone treatment for depression, demonstrated an excellent work ethic, offered glowing recommendations, undertaken extensive community service, and more than four years had passed since she had first sought admission to the bar. Id. at ¶¶33-38.

¶32 Another applicant failed to disclose that she had been involved with a series of alcohol-related incidents in college, including argumentative run-ins with police and university authorities. In re Bar Admission of Vanderperren, 2003 WI 37, 261 Wis. 2d 150, 661 N.W.2d 27. We admitted her after she had, sua sponte, corrected omissions on her law school application, undergone an AODA evaluation, produced reports showing that alcohol was not a continuing problem and she was "in full remission," had been admitted to practice law in Minnesota, and some five years had elapsed since her last problematic incident.

¶33 Another applicant had been charged with inappropriate sexual contact with two women that occurred at a social gathering with colleagues from work. He was acquitted, but agreed to resign from his employment with the police department. In re Bar Admission of Anderson, 2006 WI 57, ¶26, 290 Wis. 2d 722, 715 N.W.2d 586. The court admitted him, noting that he had voluntarily undergone an alcohol assessment, sought counseling, and worked, all before attending law school, and his record had been unblemished for some six years when he sought admission to the bar.

¶34 Another applicant committed academic misconduct during and after his first year in law school, falsifying a resume and inflating his grades, then failed to disclose several serious traffic infractions on his bar application. In re Bar Admission of Jarrett, 2016 WI 39, 368 Wis. 2d 567, 879 N.W.2d 116. We admitted him, with conditions, noting that he had completed unpaid legal internships and meaningful legal volunteer work serving economically challenged clients, offered glowing recommendations that emphasized his work ethic, judgment, and his compassion, and nearly four years had elapsed since his academic misconduct.

¶35 Most recently, we admitted an applicant who had submitted a heavily plagiarized paper in law school, failed a required Professional Responsibility class, and failed to report three underage drinking citations on his law school application. In re Bar Admission of Nichols, 2017 WI 55, 375 Wis. 2d 439, 895 N.W.2d 831. We admitted him, with conditions, influenced by the

13

fact that employers who work closely with him speak highly of him as an individual, and of his work ethic. We were strongly influenced by the fact that the professor of the class in which the applicant committed academic misconduct supported his admission to the bar, noting that the applicant had been "forthright in acknowledging his errors and accepting responsibility." Approximately three years had elapsed between the academic misconduct and his admission.

¶36 Crucial to these decisions are several common factors that are not present in the record before us. These factors include excellent character references, particularly from people who are aware of the troubling conduct compromising the application. These cases also include some affirmative evidence of rehabilitation. In some cases, where mental health or substance abuse issues may have been causally related to the underlying conduct, and the applicant provided evidence of having sought and pursued counseling or treatment. In other cases the applicant has demonstrated an interest in and commitment to the community, through the investment of time which also speaks to character. And, a critical factor is the passage of time. As time passes with no concerning conduct, we are increasingly likely to be persuaded that the applicant has addressed whatever concerns initially precluded admission.

¶37 As of the date of oral argument, three years have elapsed since the last incident involving B.F. and there is no evidence of any other concerning conduct during this period. This reflects favorably on Mr. Hausserman. However, given the

14

severity of his misconduct, which includes violation of a court order, it is a relatively short period of time compared with the cases noted above. Some additional unblemished time is warranted. Mr. Hausserman offered two character references from people who speak well of him. Again, this is commendable; however, there was some question as to whether these individuals were wholly informed of the matters of concern. These recommendations are not on par with the highly persuasive recommendations submitted on behalf of Nichols, Rippl, and Jarrett.

¶38 We are satisfied that the Board considered all relevant facets of Mr. Hausserman's application including the seriousness of Mr. Hausserman's conduct, his lack of candor in the admission process, and lack of evidence of his rehabilitation. In re Bar Admission of Saganski, 226 Wis. 2d 678, 595 N.W.2d 631 (1999). The evidence supports the Board's determination that Mr. Hausserman omitted material information from his application by initially failing to advise the Board of the B.F. incident in law school. It also supports the Board's conclusion that Mr. Hausserman sought to minimize his concerning conduct, by submitting incomplete and/or flippant disclosures.

¶39 The record before us contains several factors that are a cause for concern as set forth in BA 6.02 and BA 6.03, particularly the existence of unlawful conduct (BA 6.02(a)), concealment and nondisclosure of information on his bar application (BA 6.02(c)), violation of a court order

15

(BA 6.02(h)), and denial of admission in Iowa on character and fitness grounds (BA 6.02(k)). We have considered these factors with reference to the recency of the conduct (BA 6.03(b)), the seriousness of the conduct (BA 6.03(d)), evidence of rehabilitation (BA 6.03(f)), the applicant's candor in the admissions process (BA 6.03(g)), and the material nature of the omissions (BA 6.03(h)), and we are not persuaded that Mr. Hausserman can be safely admitted to the practice of law, even with the cautionary imposition of certain conditions.

¶40 We thus determine that the Board properly concluded, on the basis of facts that have not been shown to be clearly erroneous, that Mr. Hausserman failed to meet his burden under SCR 40.07 to establish the requisite moral character and fitness to practice law "to assure to a reasonable degree of certainty the integrity and the competence of services performed for clients and the maintenance of high standards in the administration of justice." Accordingly, we affirm the Board's decision declining to certify Mr. Hausserman for admission to the Wisconsin bar.

¶41 In closing, we observe that nothing in SCR 40.04 or elsewhere in SCR Ch. 40 precludes Mr. Hausserman from again seeking admission to this bar when he believes he can demonstrate his character and fitness to the satisfaction of the Board and this court. See Saganski, 226 Wis. 2d 678, 680; In re Bar Admission of Radtke, 230 Wis. 2d 254, 268-69, 601 N.W.2d 642 (1999).

¶42  IT IS ORDERED that the decision of the Board of Bar Examiners declining to certify that Daniel R. Hausserman has satisfied the requirements for admission to the practice of law in Wisconsin is affirmed.

¶43  IT IS FURTHER ORDERED the documents submitted under seal are deemed confidential, and will be maintained under seal until further order of the court.