# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2019AP1974-BA |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of the Bar Admission of David E. Hammer:<br><br>David E. Hammer,<br>          Petitioner,<br>     v.<br>Board of Bar Examiners,<br>          Respondent. |

BAR ADMISSION OF DAVID E. HAMMER

| | |
|---|---|
| OPINION FILED: | June 25, 2020 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| Per Curiam. | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the petitioner, there were briefs filed by *David E. Hammer*, Tampa, Florida. There was an oral argument by *David E. Hammer*.

For the respondent, there was a brief filed by *Jacquelynn B. Rothstein*, Director and Legal Counsel. There was an oral argument by *Jacquelynn B. Rothstein*.

No. 2019AP1974-BA

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

STATE OF WISCONSIN      :      IN SUPREME COURT

**In the Matter of the Bar Admission of David E. Hammer:**

**David E. Hammer,**

       **Petitioner,**

   **v.**

**Board of Bar Examiners,**

       **Respondent.**

**FILED**

**JUN 25, 2020**

Sheila T. Reiff
Clerk of Supreme Court

---

Review of Board of Bar Examiners' decision. *Decision affirmed.*

¶1 PER CURIAM. This is a review, pursuant to Supreme Court Rule (SCR) 40.08(7), of a final decision of the Board of Bar Examiners (Board) declining to certify that the petitioner, David E. Hammer, satisfied the character and fitness requirements for admission to the Wisconsin bar set forth in SCR 40.06(1). The Board's decision was based primarily on the fact that Mr. Hammer, who was a licensed Florida lawyer from 2006-2011, was disbarred in Florida for trust account violations and misappropriation of client funds.

¶2 Mr. Hammer resides in Florida. He graduated from the University of Florida Levin College of Law in 2005 and completed an LL.M. in Taxation in 2006. He was admitted to the Florida bar on May 19, 2006. From his admission in May 2006 until his law license was suspended on August 23, 2010, Mr. Hammer had what he describes as "an ill-advised solo practice" in Florida, built around a single client group: the family and friends of Paul Bilzerian and their companies.[1] As relevant here, in 2001, long before Mr. Hammer ever worked for the Bilzerian client group, a federal district court issued a sweeping injunction limiting Bilzerian's access to the courts, in an effort to stem Bilzerian's frivolous court filings (2001 Injunction). The 2001 Injunction provides:

> Paul A. Bilzerian, his agents, servants, employees and attorneys, and those persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, are prohibited from filing or causing the filing of any complaint, proceeding or motion in the United States Bankruptcy Court for the Middle District of Florida, or from commencing or otherwise causing the commencement of any proceedings in any court, other than in this Court or in appeals of this Court's Orders to the United States Court of Appeals for the District of Columbia, without prior application to and approval of this Court . . ..

---

[1] Bilzerian was convicted of securities fraud and conspiracy to defraud the United States in 1989. United States v. Bilzerian, 926 F.2d 1285 (2d Cir. 1991) (affirming conviction). The Securities and Exchange Commission then filed a civil suit against him in the summer of 1989 and obtained a judgment for approximately $62 million. S.E.C. v. Bilzerian, 29 F.3d 689 (D.C. Cir. 1994) (affirming judgment).

2

Mr. Hammer acknowledges that he received actual notice of the 2001 Injunction in December 2006.

¶3 We focus on the Board's primary reason for declining to certify Mr. Hammer. On August 23, 2010, four years after his admission to practice law, the Supreme Court of Florida issued an emergency suspension against Mr. Hammer's law license, alleging that he had misappropriated client trust funds. A formal disciplinary complaint followed. Eventually, Mr. Hammer stipulated that in November 2009, Bilzerian had directed that certain outstanding invoices and cost reimbursements not be paid to Mr. Hammer. Mr. Hammer believed these amounts were valid and owed to him. At the time, Mr. Hammer had access to funds in a trust account belonging to another Bilzerian-related entity. In January 2010, Mr. Hammer began taking money from that trust account for his own personal use. In May 2010, the client requested the money held in trust. By then, the trust fund was approximately $27,000 short of funds. To replace the missing client funds, Mr. Hammer accessed funds from another account to which he was a signatory, paying himself director fees and other amounts.

¶4 On August 30, 2011, the Florida Supreme Court issued an order disbarring Mr. Hammer, *nunc pro tunc* to September 22, 2010,

3

for misappropriating client funds.[2] Eventually, Mr. Hammer distanced himself from the Bilzerian client group, started a business, regained financial stability, and became chief information officer of Elevant, an entity that licenses a case management software program.

¶5 On January 1, 2018, Mr. Hammer applied for admission to the Wisconsin bar. In February 2018, he took and subsequently passed the Wisconsin bar exam. On January 15, 2019, the Board advised Mr. Hammer that his bar application was at risk of being denied on character and fitness grounds. Mr. Hammer, by counsel, requested a hearing and in May 2019, Mr. Hammer also voluntarily commenced an ethics tutorial with Wisconsin Attorney Dean R. Dietrich.

¶6 On August 2, 2019, the Board conducted a hearing at which Mr. Hammer appeared by counsel and testified. The Board also heard testimony from Mr. Hammer's prospective employers, who advised the Board that they will employ Mr. Hammer as an attorney if he is admitted to the Wisconsin bar. Attorney

---

[2] Meanwhile, on January 21, 2011, Mr. Hammer was publicly reprimanded by the Florida Supreme Court for actions in both state and bankruptcy courts that he knew or should have known were not meritorious but merely disruptive to the tribunals. Board Order, ¶12.

On March 31, 2011, the Florida Supreme Court further suspended Mr. Hammer's law license for 91 days, concurrent with his underlying suspension in the misappropriation matter, based on Mr. Hammer's failure to demonstrate that he had notified clients, opposing counsel, and tribunals of his license suspension. Board Order, ¶13.

Dietrich testified in support of Mr. Hammer's character and fitness to practice law in Wisconsin.

¶7 On September 19, 2019, the Board issued an adverse decision concluding that Mr. Hammer had failed to demonstrate to the Board's satisfaction that he has the necessary character and fitness to practice law in Wisconsin. The Board cited Mr. Hammer's Florida disbarment; abuse of process; extensive traffic record; and its conclusion that Mr. Hammer failed to demonstrate significant rehabilitation. The Board added that Mr. Hammer has not reapplied to the Florida bar.

¶8 This petition followed. Mr. Hammer asks this court to reverse the Board's adverse decision and permit him to become a member of the Wisconsin bar. He indicates that he would accept conditions on his law practice. In his initial brief Mr. Hammer presents three issues:

> (1) Whether Hammer satisfies the character and fitness requirements of SCR 40.06, as interpreted by this Court's prior decisions, or Hammer should be forever banned from practicing law in the State of Wisconsin;
>
> (2) Whether the conclusions of the [Board] that Hammer does not satisfy the requirements of SCR 40.06 are mere pretext for unconstitutional discrimination against a resident of Florida; and
>
> (3) Whether the [Board] committed clear error in reaching certain Findings of Fact, based on the record evidence.

¶9 This court has the ultimate responsibility for admission to the Wisconsin bar. In re Bar Admission of Rippl, 2002 WI 15, ¶16, 250 Wis. 2d 519, 639 N.W.2d 553. When, as here, we review an adverse determination, the court adopts the

5

Board's findings of fact that are not clearly erroneous. Id. The court then determines, de novo, whether the Board's conclusions of law, based on the non-erroneous facts, are proper. Id. When conducting our de novo review, we, like the Board, use the guidelines established in Bar Admission Rules (BA) 6.01-6.03.[3]

¶10 Supreme Court Rule 40.06(1)[4] requires that applicants for bar admission establish good moral character and fitness to practice law. The burden rests with the applicant to establish character and fitness to the satisfaction of the Board. See SCR 40.06(3) and SCR 40.07. Bar Admission Rule 6.01 provides that "[a] lawyer should be one whose record of conduct justifies the trust of clients, adversaries, courts and others with respect to the professional duties owed to them." Bar Admission Rule 6.02 provides that in determining whether an applicant possesses the necessary character and fitness to practice law, 12 factors constitute "cause for further inquiry." In assigning weight and significance to these 12 factors the Board is to

---

[3] The Appendix to SCR ch. 40 contains the Board's rules that provide additional guidance to the Board and to applicants.

[4] SCR 40.06(1) provides:

An applicant for bar admission shall establish good moral character and fitness to practice law. The purpose of this requirement is to limit admission to those applicants found to have the qualities of character and fitness needed to assure to a reasonable degree of certainty the integrity and the competence of services performed for clients and the maintenance of high standards in the administration of justice.

6

consider additional information set forth in SCR ch. 40 App., BA 6.03.[5]

¶11 It is undisputed that the Supreme Court of Florida disbarred Mr. Hammer in 2011. Supreme Court Rule 40.06(4) provides that suspension or revocation in another jurisdiction is a sufficient basis for denial of certification.[6] Arguably, this is the end of our inquiry. However, neither party considered this rule dispositive so we address the parties' arguments.

¶12 We begin by evaluating whether the factual findings underlying the Board's decision are clearly erroneous. Mr.

---

[5] The Board considers the 12 factors that constitute cause for further inquiry in light of: (a) the applicant's age at the time of the conduct; (b) the recency of the conduct; (c) the reliability of the information concerning the conduct; (d) the seriousness of the conduct; (e) the mitigating or aggravating circumstances; (f) the evidence of rehabilitation; (g) the applicant's candor in the admissions process; (h) the materiality of any omissions or misrepresentations; and (i) the number of incidents revealing deficiencies. SCR ch. 40 App., BA 6.03.

[6] SCR 40.06(4) provides:

The board shall not certify an applicant while an attorney disciplinary matter against the applicant is pending or the applicant is certified by the department of workforce development as delinquent in making court-ordered payments of support or failing to comply with a subpoena or warrant, as those terms are defined in SCR 11.04(1). If an applicant's license to practice law in another jurisdiction is suspended or revoked for reasons related to professional responsibility at the time the application is filed or at any time that the application is pending, the suspension or revocation is a sufficient basis for denial of certification.

Hammer takes issue with many of the Board's factual findings but ultimately acknowledges that none of the alleged factual discrepancies would have altered the Board's decision.   Hammer Br. at 34, fn. 2.   Several of his objections can be broadly characterized as relating to imprecise rhetoric used by the Board to describe his past conduct.   These include:

- An objection to the Board's finding that there were companies from whom Mr. Hammer "*converted* money. . . ." Board Order, ¶14 (emphasis added).   Mr. Hammer says there was never a finding that he "converted" money.

- An objection to the Board's statement that "[Hammer] was also a signatory on another account, [owned by Hammer's] client . . .." Board Order, ¶7.   Mr. Hammer clarifies he did not take the money used to reimburse another client from a client's account.

- An objection to the Board's statement that in March 2011 he was suspended for failure to notify clients, opposing counsel, and tribunals of a license suspension.   Board Order, ¶13.   Mr. Hammer clarifies that he did provide notice of his suspension.   He failed to timely submit the affidavit confirming that he had made the required notifications to the Florida bar.

- An objection to the Board's characterization of his driving record, e.g., that he "was most recently cited for a speeding offense in 2017." Board Order, ¶21.   Mr. Hammer says the 2017 incident wasn't a speeding offense but rather

a "Violation of the Rules of the Pennsylvania Turnpike Commission." He objects to the Board's statement that he "reported having his driving privileges suspended nineteen (19) times." Mr. Hammer clarifies that 16 of the suspensions were for failure to timely pay traffic citations. He also observes that various Board members made statements during his hearing implying that his driving record was a trivial or even amusing matter.

¶13 Mr. Hammer also challenges the factual basis for the Board's legal conclusion that Mr. Hammer engaged in "abuse of process," a stated "cause for further inquiry." SCR ch. 40 App., BA 6.03(e). The Board found that he used a 2013 Chapter 13 personal bankruptcy proceeding to forestall his family's eviction from their home. Board Order, ¶18. Mr. Hammer explains that no eviction was pending when he filed his bankruptcy petition. He states that he felt compelled to file the bankruptcy petition because of another existing legal dispute. He also defends his decision to commence a civil lawsuit in 2010 against 32 defendants, which the Board described as abuse of process, finding it alleged "fantastical claims."

¶14 We need not decide whether the Board committed clear error in characterizing these two incidents as abuse of process. There is ample evidence to support the Board's conclusion that Mr. Hammer engaged in abuse of process, as evidenced by having been found in civil contempt. See, e.g., S.E.C. v. Bilzerian, 729 F. Supp. 2d 9 (D.D.C. 2010). In that opinion, the court

9

relates that Mr. Hammer was found in civil contempt for violating the 2001 Injunction for his role commencing and prosecuting several lawsuits on behalf of Bilzerian. The federal court ordered Mr. Hammer to purge his contempt "by ceasing his representation of Bilzerian in any capacity in any litigation matters and withdrawing as counsel, if listed as counsel of record, in any of the above cases." Id. at 2 (citing Mem. Order and Op. 11, August 12, 2009, 641 F. Supp. 2d 16 (D.D.C. 2009), ECF No. 1053). The federal court also ordered Mr. Hammer to file a sworn statement that he had complied with the order within ten days. Id. Instead, Mr. Hammer waited 15 days to file a sworn statement that said, among other things, that "he has never represented Paul Bilzerian." Statement of Compliance, May 26, 2009, ECF No. 993. The federal court stated: "That outright lie was paradigmatic of Hammer's habit of misleading courts." Bilzerian, 729 F. Supp. 2d at 11. The federal court offered other examples:

> [Mr. Hammer] told Judge Paskay of the Bankruptcy Court for the Middle District of Florida that the show cause proceedings in this Court had already concluded, when in fact they were still under advisement. Paskay Order 12, ECF No. 980. Judge Paskay found that Hammer's "blatant disregard" of the Court's order was "typical and additional proof of Mr. Hammer's litigious nature...." *Id.* In a separate matter, Judge Paskay characterized Hammer's conduct as "obstructive, defiant and inappropriate" and his suit as an "unethical use of the legal system." *See* Docket 19, ECF No. 1029. Judge Paskay is not the only judge who has found it necessary to reprimand Hammer, though. Judge Martha J. Cook, in the Thirteenth

10

> Circuit, Hillsborough County, Florida, has labeled Bilzerian and Hammer's conduct "egregious," "sanctionable," and "clearly unethical." Cook's Order 10, 12, ECF No. 951. She went on to say that Hammer had participated in "sandbagging, disrupting discovery, and walking down a road that would get him in a lot of trouble." In light of all this, she was "inclined to order him to attend peer review or some sort of remedial training." *Id.* at 9-12.

Id.

¶15  On July 13, 2010, the federal court held Mr. Hammer in civil contempt for the second time for violating the 2001 Injunction.  Id.  (citing Mem. Op., 729 F. Supp. 2d at 2-3, 2010 WL 2771844 at *1).  The federal court once again ordered Mr. Hammer to purge his contempt and ordered him to file a sworn statement affirming that he had complied with the court's conditions.  Id.  Mr. Hammer waited nearly a year before informing the federal court that he had complied and then asked the federal court to vacate the contempt finding. The federal court declined.  Although Mr. Hammer's law license was, by then, already suspended, the federal court stated:

> It is true that Hammer, dispossessed of his Bar license, is a much less serious threat to this Court's [2001 Injunction]. Still, the Court is convinced that its [2010 contempt order] must remain in place despite Hammer's suspension. It is possible that Hammer could be licensed by another Bar or re-admitted to the Florida Bar, in which case, he would again pose an immediate threat to the Court's [2001 Injunction].

Id. at 19.  In the face of the stinging rebukes his conduct elicited from judges serving several different courts, Mr. Hammer's effort to characterize his conduct as some "complex technical violation" rings hollow.

11

¶16 Mr. Hammer also challenges the Board's finding that he was not credible and failed to show remorse. Mr. Hammer claims his application was extremely thorough, complete, and candid, and notes that the Board made no finding to the contrary.[7] He complains that "the Board did not once say what it believed to be the truth, if it disbelieved Hammer." We are disinclined to second guess credibility determinations made by factfinders. In re Bar Admission of Nichols, 2017 WI 55, ¶18, 375 Wis. 2d 439, 895 N.W.2d 831. And, nothing in this record suggests that it was "clearly erroneous" for the Board to decide that Mr. Hammer's explanations for his misconduct were insufficient to excuse that misconduct.

¶17 Mr. Hammer also objects to the Board's determinations that his voluntary ethics training with Attorney Dietrich was "limited" or "brief" and that Attorney Dietrich "lacked an adequate foundation to render a reliable opinion of Mr. Hammer's character and fitness to practice law." He defends the value and scope of the ethics training. He argues that Attorney Dietrich considered the same materials that the Board considered and argues that the Board does not explain why it was able to evaluate Mr. Hammer comprehensively, but Attorney Dietrich was not. However, as Attorney Dietrich himself acknowledged, it is the Board, not the expert selected by the applicant, who is charged by this court with evaluating the character and fitness

---

[7] This assertion, of course, predated the Board's recent motion to supplement the record. See infra, ¶25, fn. 10.

of bar applicants.   SCR 30.01.   We decline to disturb the Board's decision to discount Attorney Dietrich's favorable testimony.   We conclude that the primary factual findings on which the Board based its conclusion that Mr. Hammer failed to satisfy SCR 40.06(1) are not clearly erroneous.[8]

¶18  We turn to Mr. Hammer's claim that the Board's adverse determination is a "mere pretext for unconstitutional discrimination against a resident of Florida."   Mr. Hammer's effort to elevate his bar admission case to a constitutional challenge fails and is, moreover, constructed upon a faulty foundation.   Mr. Hammer claims that he should have been offered conditional admission pursuant to SCR 40.075(1).   In this, Mr. Hammer is incorrect.   Conditional admission was not appropriate on this record.   Only applicants who are able to meet character and fitness requirements are considered for conditional admission.   See, e.g., In re Bar Admission of Hausserman, 2018 WI 115, ¶26, fn. 5, 385 Wis. 2d 70, 921 N.W.2d 211; In re Bar Admission of Jarrett, 2016 WI 39, ¶35, fn. 3, 368 Wis. 2d 567, 879 N.W.2d 116.   Conditional admission is not designed to address applicants who exhibit a lack honesty, integrity, or credibility for admission.   Id.

---

[8] To the extent that we have not discussed each of Mr. Hammer's objections it is because we agree they are insufficient to alter the outcome of this matter.   "'An appellate court is not a performing bear, required to dance to each and every tune played on an appeal.'"   County of Fond du Lac v. Derksen, 2002 WI App 160, ¶4, 256 Wis. 2d 490, 647 N.W.2d 922 (citation omitted).

13

¶19 Based on this faulty premise, Mr. Hammer then reasons that because he was not offered conditional admission there "must be some additional factor, beyond Mr. Hammer's past conduct, which has weighed in the Board's decision to decline to certify Mr. Hammer's admission." Mr. Hammer suggests that the "unspoken factor" is his Florida residency. He thus claims the Board's decision violates the privileges and immunities clause of the United States Constitution, citing Supreme Court of New Hampshire v. Piper, 470 U.S. 274 (1985). Piper is inapposite. There, a New Hampshire court rule that excluded nonresidents from practicing law in New Hampshire was ruled invalid; the Constitution prohibits a state bar from excluding applicants on the basis of their state of residence. Id. Wisconsin has no such rule and Mr. Hammer offers not a shred of evidence that the Board employs a different standard for evaluating the character and fitness of resident and non-resident bar applicants.

¶20 Mr. Hammer's misunderstanding appears predicated on his oft-repeated claim that if he had committed the same professional misconduct in Wisconsin, rather than Florida, he would have been suspended, not disbarred.[9] Assuming, arguendo, this is true, reinstatement of a person's law license following a disciplinary suspension is governed by different rules,

---

[9] In Florida, disbarment is the presumed sanction for lawyers found guilty of theft from a lawyer's trust account or special trust funds received or disbursed by a lawyer as guardian, personal representative, receiver, or trustee. See FL R. Disc. 3-5.1(f).

14

SCR chs. 21-22, and administered by a different court agency, the Office of Lawyer Regulation. Nor is the formal reinstatement process as automatic as Mr. Hammer appears to believe. See, e.g., Rule Petition 19-06, In the Matter of Repealing and Recreating Supreme Court Rule 22.30 pertaining to license reinstatement following disciplinary suspension, filed March 13, 2019 (discussing the "more complex and time-consuming reinstatement process required for respondent attorneys whose licenses are revoked or suspended for six months or longer.")

¶21 Mr. Hammer points to the Board's comment that he has not, for instance, "made no effort to become reinstated to the Florida Bar, despite being eligible to do so . . .." Board Order, p. 10. Mr. Hammer says that "[c]ertainly, this same expectation would not be had of a Wisconsin resident." However, SCR 40.06(4) clearly provides that a bar applicant's license status in other jurisdictions is a relevant inquiry. In In re Bar Admission of Littlejohn, 2003 WI 36, ¶23, 261 Wis. 2d 183, 661 N.W.2d 42, we declined to admit an applicant who had been professionally disciplined when he was a dentist. Although Littlejohn was later admitted to practice before the Minnesota bar, we observed that "is entirely appropriate for the [Board] to take into account the favorable decision made by the other state, but we see no reason to require the [Board] to expressly discuss or reject the other state's determinations. While the other state's decision may be a relevant factor, the [Board] should be free to accord it whatever weight the [Board] deems

15

appropriate."; See also Bar Admission of Hausserman, 385 Wis. 2d 70, ¶17 (noting that Iowa Board of Law Examiners had declined to let the applicant take Iowa bar exam because of character and fitness concerns). We reject Mr. Hammer's claim that the Board discriminated against him by virtue of his Florida residency.

¶22 We turn to Mr. Hammer's primary claim: that the Board's conclusion is inconsistent with this court's resolution of other bar admission cases. Mr. Hammer identifies several common themes in cases when we were persuaded to admit applicants despite an adverse determination, including excellent character references, affirmative evidence of rehabilitation, candor in the application process, commitment to the community, and, critically, the passage of time since the problematic conduct. See, e.g., In re Bar Admission of Rippl, 2002 WI 15, ¶16, 250 Wis. 2d 519, 639 N.W.2d 553; In re Bar Admission of Vanderperren, 2003 WI 37, 261 Wis. 2d 150, 661 N.W.2d 27; In re Bar Admission of Anderson, 2006 WI 57, ¶26, 290 Wis. 2d 722, 715 N.W.2d 586; In re Bar Admission of Jarrett, 2016 WI 39, 368 Wis. 2d 567, 879 N.W.2d 116; and In re Bar Admission of Nichols, 2017 WI 55, 375 Wis. 2d 439, 895 N.W.2d 831.

¶23 While we have, on occasion, overruled the Board and admitted certain applicants despite troubling past conduct, we conclude that Mr. Hammer cannot be admitted to their ranks. We acknowledge that a decade has passed since the misconduct culminating in Mr. Hammer's Florida disbarment and that Mr.

16

Hammer cannot undo his past misconduct. This conundrum does not mean, however, that we are somehow compelled to offer him a law license. While the passage of time may aid a bar applicant's case, nothing in our prior bar admission cases should be construed to imply that an applicant enjoys a presumption of admission after some period of time has elapsed. Lathrop v. Donohue, 10 Wis. 2d 230, 237, 102 N.W.2d 404, 408 (1960) (observing that the practice of law is not a right but a privilege).

¶24 With the serious nature of his misconduct, coupled with the number of incidents revealing deficiencies (BA 6.03(d), (i)), Mr. Hammer has created a very heavy burden for himself. In such cases the passage of time may not be sufficient to persuade us that an applicant should be admitted to the practice of law.

¶25 Based on our own review of the non-erroneous facts of record before the Board at the time of its decision, we agree that Mr. Hammer has failed to meet his burden under SCR 40.07 to establish the requisite moral character and fitness to practice law "to assure to a reasonable degree of certainty the integrity and the competence of services performed for clients and the maintenance of high standards in the administration of

justice."[10]   Accordingly, we affirm the Board's decision declining to certify Mr. Hammer for admission to the Wisconsin bar.

¶26  IT IS ORDERED that the decision of the Board of Bar Examiners declining to certify that David E. Hammer has satisfied the requirements for admission to the practice of law in Wisconsin is affirmed.

¶27  IT IS FURTHER ORDERED the documents submitted under seal are deemed confidential, and will be maintained under seal until further order of the court.

---

[10] On April 30, 2020, the Board moved to supplement the record with evidence that as of October 2019, Mr. Hammer was a named defendant in two separate lawsuits and had failed to disclose the existence of these lawsuits to the Board. The Board contends this violated Mr. Hammer's continuing duty to amend his bar application.  See BA 14.03 ("Applicants are required to notify the Board in writing of any changes with respect to the information elicited by the application, and each application must be amended to reflect the facts throughout the entire time that the application is pending.")  Mr. Hammer claims that he had no duty to disclose the litigation because the Board had rendered its adverse decision before these lawsuits were filed so his bar application was no longer "pending."

By separate order we took judicial notice of the existence of the two lawsuits, Wis. Stat. § 902.01(2)(b) & (3), and dismissed the parties' motions.  The new information did not influence this court's decision to affirm the Board's adverse determination.

However, the continuing obligation set forth in the bar application and provided in SCR ch. 40 App., BA 14.03, applies to applicants during the pendency of an appeal from an adverse determination of the Board.

18